Stephen M. Scott, OSB No. 134800
smscott@fisherphillips.com
Todd A. Lyon, OSB No. 076706
tlyon@fisherphillips.com
Janelle W. Debes, OSB No. 211543
jdebes@fisherphillips.com
FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262 Telephone
(503) 242-4263 Facsimile

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CASALA, LLC, dba Bubble's Hash, an Oregon limited liability company; and REC REHAB CONSULTING LLC, dba Ascend Dispensary, an Oregon limited liability company, | Case No. 3:25-cv-00244-IM |
| Plaintiffs, | PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION |
| v. | **ORAL ARGUMENT REQUESTED** |
| TINA KOTEK, Governor of the State of Oregon, in her official capacity; DAN RAYFIELD, Attorney General of the State of Oregon, in his official capacity; DENNIS DOHERTY, Chair of the Oregon Liquor and Cannabis Commission, in his official capacity; and CRAIG PRINS, the Executive Director of the Oregon Liquor and Cannabis Commission, in his official capacity, | |
| Defendants. | |

PAGE i -    PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

# TABLE OF CONTENTS

Page

**Motion** ........................................................................................................................1

**Memorandum of Law** ..................................................................................................1

  A.   Attempts to Notify Defendants ...........................................................................1

  B.   Background on Oregon Cannabis Regulations ...................................................3

  C.   Background on the Enactment of Measure 119 ..................................................4

  D.   The Specifics of Measure 119 ............................................................................8

  E.   The Active Enforcement of Measure 119 as Approved.....................................10

  F.   The Harm Imposed Upon Plaintiffs and Oregonians........................................10

  G.   Legal Standard ....................................................................................................14

      1.  Plaintiffs are likely to succeed on the merits ..........................................15

          i.   Preemption standards under the NLRA ........................................ 16

              (a)  Measure 119 is preempted under *Garmon*
                       as it attempts to regulate activity subject to the NLRA .............. 17

              (b)  Measure 119 is preempted under *Machinists* as it
                       attempts to regulate activities where the NLRA has
                       left that to the economic forces that may be ................................ 19

          ii.  Measure 119 is void for vagueness ........................................... 21

          iii.  Measure 119 violates free speech protections ...................................... 23

          iv.  Measure 119 violates Equal Protection of the Laws.............................. 25

          v.   Measure 119 improperly infringes on the Right to Contract ................ 28

      2.  If the Court finds Plaintiffs are likely to succeed on the merits,
         every other injunction factor also weighs in their favor .............................29

          i.   Plaintiffs will be irreparably harmed without a temporary
              and preliminary injunction ..................................................................... 30

          ii.  The balance of equities and public interest weigh in
              Plaintiffs' favor ..................................................................................... 34

  H.   Security .................................................................................................................36

  I.   Conclusion ...........................................................................................................37

   **Certificate of Compliance (Word Count)** ...............................................................37

PAGE ii -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
              AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Airline Service Providers Ass'n v. Los Angeles World Airports*,
  873 F.3d 1074 (9th Cir. 2017) ............................................................20

*All For the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ............................................................15

*Allied Structural Steel Co. v. Spannaus*,
  438 U.S. 234, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978)......................28

*Am. Trucking Ass'ns v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ............................................................30

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987)......................30

*Ariz. Dream Act Coal. v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ..............................................................27

*Ashley Sveen v. Kaye Melin*,
  584 U.S. 811, 138 S. Ct. 1815, 201 L. Ed. 2d 180 (2018)...................28

*Baird v. Bonta*,
  81 F.4th 1036 (9th Cir. 2023) .......................................................15, 30

*Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*,
  584 F.2d 308 (9th Cir. 1978) ..............................................................15

*Boardman v. Pac Seafood Grp.*,
  822 F.3d 1011 (9th Cir. 2016) ............................................................32

*California Tchrs. Ass'n v. State Bd. of Educ.*,
  271 F.3d 1141 (9th Cir. 2001) ............................................................23

*Cascadia Wildlands v. United States Forest Serv.*,
  No. 6:21-CV-01225-AA, 2021 WL 6112546 (D. Or. Dec. 27, 2021)...................34

*Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*,
  840 F.2d 701 (9th Cir. 1998) ..............................................................14

*Chamber of Com. of U.S. v. Brown*,
  554 U.S. 60, 128 S. Ct. 2408, 171 L. Ed. 2d 264 (2008).....................16

PAGE iii -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
           AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
  473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985).................................................25, 26

*Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*,
  447 U.S. 530, 100 S. Ct. 2326, 65 L. Ed. 2d 319 (1980).................................................24, 25

*Country Classic Dairies, Inc. v. Milk Control Bureau*,
  847 F.2d 593 (9th Cir. 1988) .........................................................................................26

*Dana Corp. & Int'l Union*,
  356 NLRB 256 (2010) ....................................................................................................18

*Drakes Bay Oyster Co. v. Jewell*,
  747 F.3d 1073 (9th Cir. 2014) .......................................................................................34

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
  459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983)....................................................29

*EraNova Glob. v. Taylor*,
  No. 3:25-CV-00051-AN, 2025 WL 253351 (D. Or. Jan. 21, 2025)..................................3

*F.C.C. v. Beach Commc'ns, Inc.*,
  508 U.S. 307, 113 S. Ct. 2096, 124 L. Ed. 2d 211 (1993).............................................27

*Frankl v. HTH Corp.*,
  650 F.3d 1334 (9th Cir. 2011) .......................................................................................30

*Freeman v. City of Santa Ana*,
  68 F.3d 1180 (9th Cir. 1995) .........................................................................................26

*Golden State Transit Corp. v. City of Los Angeles (Golden State I )*,
  475 U.S. 608, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986)..............................................19, 20

*Grayned v. City of Rockford*,
  408 U.S. 104, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972)...................................................21

*Grutter v. Bollinger*,
  539 U.S. 306 (2003).......................................................................................................26

*Hill v. Colorado*,
  530 U.S. 703, 120 S. Ct. 2480, 147 L. Ed. 2d 597 (2000).............................................21

*Hobbs v. Cnty. of Westchester*,
  397 F.3d 133 (2d Cir. 2005)...........................................................................................24

PAGE iv -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

*Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of*
  *Associated Builders & Contractors, Inc.*,
  801 F.3d 950 (9th Cir. 2015) ................................................................16

*Int'l Ass'n of Machinists, Tool & Die Makers Lodge No. 35 v. Nat'l Lab. Rels. Bd.*,
  311 U.S. 72, 61 S. Ct. 83, 85 L. Ed. 50 (1940) .......................................17

*Int'l Assoc. of Machinists v. Wis. Emp. Rel. Comm'n*,
  427 U.S. 132, 96 S. Ct. 2548 (1976) ............................................. *passim*

*Int'l Ladies' Garment Workers' Union, AFL-CIO v. N. L. R. B.*,
  366 U.S. 731, 81 S. Ct. 1603, 6 L. Ed. 2d 762 (1961) ...........................17

*Kev, Inc. v. Kitsap Cnty.*,
  793 F.2d 1053 (9th Cir. 1986) ..............................................................21

*League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*,
  752 F.3d 755 (9th Cir. 2014) ................................................................34

*Leiva–Perez v. Holder*,
  640 F.3d 962 (9th Cir. 2011) ................................................................15

*Lopez v. Brewer*,
  680 F.3d 1068 (9th Cir. 2012) ..............................................................15

*Maryland v. Louisiana*,
  451 U.S. 725, 101 S. Ct. 2114, 68 L. Ed. 2d 576 (1981) .......................16

*Melendres v. Arpaio*,
  695 F.3d 990 (9th Cir. 2012) ..............................................30, 34, 35

*Metro. Milwaukee Ass'n of Com. v. Milwaukee Cnty.*,
  431 F.3d 277 (7th Cir. 2005) ................................................................18

*Miller v. Heimuller*,
  No. 3:23-CV-293-SI, 2023 WL 3559529 (D. Or. May 18, 2023) ...........36

*Miss Univ. for Women v. Hogan*,
  458 U.S. 718 (1982) ............................................................................26

*N. L. R. B. v. Gissel Packing Co.*,
  395 U.S. 575, 89 S. Ct. 1918, 23 L. Ed. 2d 547 (1969) .........................19

*N.L.R.B. v. Virginia Elec. & Power Co.*,
  314 U.S. 469, 62 S. Ct. 344, 86 L. Ed. 348 (1941) ...............................25

PAGE v -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
           AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

*Olagues v. Russoniello,*
  770 F.2d 791 (9th Cir. 1985) ...................................................................26

*Patagonia Area Res. All. v. U. S. Forest Serv.,*
  2024 U.S. App. LEXIS 11746 (9th Cir. May 15, 2024).......................................15

*Quoting Killa Bees Distribution LLC v. Left Coast Fin. Sols., Inc.,*
  No. 3:23-CV-1629-JR, 2024 WL 4664490 (D. Or. Nov. 4, 2024)...................16, 30

*R.A.V. v. City of St. Paul,*
  505 U.S. 377, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992).....................................24

*Reed v. Town of Gilbert, Ariz.,*
  576 U.S. 155, 135 S. Ct. 2218, 192 L. Ed. 2d 236 (2015).....................................24

*Reynolds v. Sims,*
  377 U.S. 533 (1964)...................................................................................26

*Romer v. Evans,*
  517 U.S. 620, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996).....................................26

*RUI One Corp. v. City of Berkeley,*
  371 F.3d 1137 (9th Cir. 2004) ......................................................................27

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
  547 U.S. 47, 126 S. Ct. 1297, 164 L. Ed. 2d 156 (2006)................................23, 25

*San Diego Bldg. Constr. Trades Council v. Garmon,*
  359 U.S. 236, 79 S. Ct. 773 (1959)........................................................5, 16, 17, 19

*Sessions v. Dimaya,*
  584 U.S. 148, 138 S. Ct. 1204, 200 L. Ed. 2d 549 (2018).....................................21

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
  240 F.3d 832 (9th Cir. 2001) ........................................................................30

*Thornhill v. State of Alabama,*
  310 U.S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940)...............................................23

*Too Marker Products, Inc. v. Shinhan Art Materials, Inc.,*
  2009 WL 4718733 (D. Or. 2009).....................................................................14

*Univ. of Tex. v. Camenisch,*
  451 U.S. 390, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981).......................................15

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
766 F.2d 1319 (9th Cir.), *amended,* 775 F.2d 998 (9th Cir. 1985) .......................................37

*Victory Processing, LLC v. Fox*,
937 F.3d 1218 (9th Cir. 2019) ....................................................................................24

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
455 U.S. 489, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982) ................................21, 22

*Williams v. Brown*,
567 F. Supp. 3d 1213 (D. Or. 2021) ......................................................................14, 36

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ........................14, 15, 34

*Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*,
475 U.S. 282, 106 S. Ct. 1057, 89 L. Ed. 2d 223 (1986) ...................................16

**Statutes**

29 U.S.C. §157 ..................................................................................................17, 18

29 U.S.C. §158 ..........................................................................................................23

29 U.S.C. §158 (a)(1) ...............................................................................................17

29 U.S.C. §158 (a)(2) ...............................................................................................17

29 U.S.C. §158 (c) ..............................................................................................19, 20

National Labor Relations Act (NLRA), 29 U.S.C. §§ 151, *et seq* ........................16

NLRA ................................................................................................................ *passim*

NLRA Section 7 .........................................................................................................17

NLRA Section 8 ...................................................................................................17, 30

NLRA Section 8(c) .....................................................................................................25

Or. Laws Ch. 475C ......................................................................................................3

ORS 475C.005-475C.525 .......................................................................................3, 8

ORS 475C.017 ..............................................................................................................8

ORS 475C.017(2)(a) ....................................................................................................3

PAGE vii - PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

ORS 475C.017(2)(b) ................................................................................................3

ORS 475C.017(2)(c)-(d) ..........................................................................................3

ORS 475C.033 .........................................................................................................3

ORS 475C.085 .............................................................................................4, 8, 13

ORS 475C.097 .............................................................................................4, 8, 11

ORS 475C.125 .........................................................................................................8

ORS 475C.133 .........................................................................................................8

ORS 475C.281 .......................................................................................................17

ORS 475C.289 .........................................................................................................8

ORS 475C.548 .........................................................................................................8

ORS 663.005 .........................................................................................................28

ORS 663.110 ...........................................................................................9, 19, 24

ORS 663.160 ...............................................................................................19, 23

United for Cannabis Workers Act ..........................................................................6

**Other Authorities**

United States Constitution First Amendment ...............................................21, 23

United States Constitution Fourteenth Amendment ............................................23

Fed. R. Civ. P. 65 ...................................................................................1, 14, 36

Fed. R. Civ. P. 65(b)(1)(A)-(B) ...........................................................................1

Fed. R. Civ. P. 65(c) ..........................................................................................36

Fed. R. Civ. P. 65(d)(2) .......................................................................................2

https://olmsapps.dol.gov/query/getOrgQry.do .....................................................9

https://www.nccih.nih.gov/health/cannabis-marijuana-and-cannabinoids-what-
you-need-to-know ...........................................................................................35

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

Measure 119 on the November 2024 Ballot. https://www.ufcw555.org/ip35-submitted/ .................................................................................................... 6

*NLRA's Jurisdictional Standards.* https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/jurisdictional-standards; ........................................................... 28

OAR 137-003-0550 ....................................................................................... 34

OAR 845-003-0331 (3)(b) ............................................................................. 12

OAR 845-005-0312 ......................................................................................... 3

OAR 845-005-0314 ....................................................................................... 35

OAR 845-005-0315 ....................................................................................... 35

OAR 845-005-0360 ......................................................................................... 3

U.S. Const. Amend. I .................................................................................... 23

U.S. Const. Amend. XIV, § 1 ....................................................................... 25

U.S. Const. Art. I, § 10, cl. 1 ........................................................................ 28

U.S. Const., Art. VI, cl. 2 ............................................................................. 16

U.S. District Court (Or) LRs 7-4 and 65 ........................................................ 1

PAGE ix -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

## MOTION

Pursuant to Fed. R. Civ. P. 65 and LRs 7-4 and 65, Plaintiffs Casala, LLC, dba Bubble's Hash ("Bubble's Hash"), and Rec Rehab Consulting LLC, dba Ascend Dispensary ("Ascend") (collectively, "Plaintiffs"), respectfully request that this Court enter a temporary and preliminary injunction enjoining Defendants Tina Kotek, in her official capacity as the Governor of the State of Oregon ("Governor Kotek"), Dan Rayfield, in his official capacity as the Attorney General of the State of Oregon ("AG Rayfield"), Dennis Doherty, in his official capacity as the Chair of the Oregon Liquor and Cannabis Commission ("Chair Doherty"), and Craig Prins, in his official capacity as the Executive Director of the Oregon Liquor and Cannabis Commission ("Director Prins") (collectively, "Defendants"), and their officers, agents, servants, employees, and all persons in concert or participation with them who received notice of the injunction from enforcing the provisions of Oregon's Ballot Measure 119, which mandates labor peace agreements between a bona fide labor organization and cannabis licensees when applying or renewing a cannabis processor, retail, medical (processor), medical (retailer), researchers (certification), and laboratory licenses or certifications.

In support of this Motion, Plaintiffs submit the following Memorandum of Law, the Declaration of Stephen Scott ("Scott Decl."), the Declaration of Bret Born ("Born Decl."), and the Declaration of Pam Haley ("Haley Decl.").

## MEMORANDUM OF LAW

### A.    Attempts to Notify Defendants

Pursuant to Fed. R. Civ. P. 65(b)(1)(A)-(B), "the court may issue a temporary restraining order without written notification or oral notice to the adverse party if: * * * the movant's attorney

PAGE 1 -    PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

certifies in writing any efforts made to give notice and the reasons why it should not be required." Furthermore, any order granting an injunction will only bind those who have received actual notice via personal service. Fed. R. Civ. P. 65(d)(2).

On February 10, 2025, via email and certified mail, Plaintiffs notified Defendants Governor Kotek, AG Rayfield, and Director Prins of the intent to file this lawsuit and to seek a temporary and preliminary injunction to enjoin the enforcement of Measure 119. Scott Decl. ¶ 2. On February 12, 2025, the same letter was provided to Chair Doherty. Scott Decl. ¶ 2. Copies of these letters are combined as Exhibit 1. On February 12, 2025, Assistant Attorney General YoungWoo Joh emailed, confirming representation, and acknowledged Plaintiffs' intent to seek an emergency hearing. Scott. Decl. ¶ 3. The Complaint was filed on February 12, 2025. Mr. Joh confirmed authority to waive service of the Complaint on behalf of all Defendants on February 14, 2025. Scott Decl. ¶ 4.

On February 14, 2025, the parties discussed the need for a temporary restraining order and Mr. Joh filed a notice of appearance. Scott Decl. ¶ 4. Given the implications of Measure 119 on Plaintiffs, other cannabis employers and employees, and the public, Plaintiffs filed the Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion") on February 17, 2025. The Motion was provided to Mr. Joh on February 17, 2025 as stated in the certificate of service. Scott Decl. ¶ 5.

This Court should not require further attempts to apprise Defendants, including an opportunity to respond to the Motion as Plaintiffs and other non-parties are at risk of losing their Oregon cannabis licenses, constitutional rights, and access to healthcare that cannot be remedied without immediate court intervention. Scott Decl. ¶¶ 6-7. The circumstances here are far different

PAGE 2 -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

from *EraNova Global v. Taylor*, where the plaintiff failed to include a certificate of service or include information of any attempts to notify the defendants. *EraNova Glob. v. Taylor*, No. 3:25-CV-00051-AN, 2025 WL 253351, at *3 (D. Or. Jan. 21, 2025). Defendants are aware of the Motion and once a hearing is scheduled, Plaintiffs will make efforts to inform Mr. Joh. Scott Decl. ¶ 6.

## B.    Background on Oregon Cannabis Regulations

In November 2014, the State of Oregon voted to legalize the recreational use of marijuana through Ballot Measure 91. Measure 91 permitted persons who were licensed, controlled, regulated, and taxed by the State of Oregon to legally manufacture and sell marijuana to persons over the age of 21. Measure 91 is now codified under Or. Laws Ch. 475C (formerly 475B).

Defendants, through the Oregon Liquor and Cannabis Commission ("OLCC"), have the authority to regulate the purchase, sale, production, processing, transportation, and delivery of marijuana in the State of Oregon. ORS 475C.017(2)(a). Defendants also have the authority to adopt, amend, or repeal rules and to carry out the provisions of the cannabis regulations including any law of the state that charges the OLCC with a duty, function, or power as it relates to marijuana. ORS 475C.017(2)(c)-(d). Defendants through the OLCC have the authority to grant, refuse, suspend, or cancel licenses for the sale, processing, production, or other marijuana-related licenses. ORS 475C.017(2)(b). Effective January 1, 2017, recreational marijuana could only be sold by those who had obtained a recreational license through the OLCC.

Applicants for a license or renewal of a license under ORS 475C.005-475C.525 must apply in the form that the OLCC requires. OAR 845-005-0312; OAR 845-005-0360. The OLCC may reject or refuse any application or renewal license. ORS 475C.033. The processing of marijuana

PAGE 3 -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

is subject to the regulations of the OLCC, and any marijuana processor in the State of Oregon must have a processor's license for the premises at which the marijuana is processed, including Plaintiff Bubble's Hash. ORS 475C.085. The retail sale of marijuana is subject to the regulations of the OLCC, and any marijuana retailer must have a retail license for the premises at which the marijuana items are sold, including Plaintiff Ascend. ORS 475C.097. Without a valid license, registration, or applicable exemption, a person may not produce, process, transport, deliver, or sell marijuana items in the State of Oregon.

Effective March 7, 2024, Governor Kotek extended the 2022 statewide caps and moratorium placed on all new applications for recreational marijuana producers, processors, wholesalers, and retailer licenses as managed by Defendants through the OLCC. A copy of HB 4121 is attached as Exhibit 2. The OLCC may not accept new retailer and processor licenses by the OLCC based on whether there is already one active license per 12,500 residents (processor) or 7,500 residents (retailer) twenty-one and older in Oregon. Scott Decl. ¶ 9, Ex. 2. Due to HB 4121 if a retailer or processor loses their license, a re-issuance may only be approved if based on a change in location or ownership. However, HB 4121 does not allow retailers or processors who lose their license due to Measure 119 to reapply, unless they are within the resident cap requirements. Scott Decl. ¶ 9, Ex. 2.

## C.    Background on the Enactment of Measure 119

In the 82nd Oregon Legislative Assembly–2023 Regular Session, HB 3183 was introduced relating to labor peace agreements as a condition for cannabis licensure in the State of Oregon. HB 3183, if passed, would have required the OLCC to approve cannabis applicants or renewal licenses from producers, wholesalers, retailers, and processors if they submitted a signed

PAGE 4 -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

declaration that the applicant or licensee would not interfere with communications between labor representatives and employees regarding organizing rights. Or they offered a signed declaration that the applicant or licensee had entered into a labor peace agreement with the labor organization. HB 3183 is attached as Exhibit 3.

Had HB 3183 passed, any applicant or licensee who failed to comply with the declaration upon licensure or the terms of the labor peace agreement were at risk of suspension, revocation, or denial. Scott Decl. ¶ 10, Ex. 3. Unsurprisingly, HB 3183 was introduced at the request of the United Food and Commercial Workers Local 555 ("UFCW 555"). Scott Decl. ¶ 10, Ex. 3. It was pitched that California, New Jersey, New York, Illinois, and Virginia had similar state statutes requiring labor peace agreements between licensed cannabis businesses and labor organizations. *Id.* Challenges to these state statutes as unconstitutional have ensued. S*ee CTRL ALT DESTROY, Inc., v. Nicole Elliot, et al.*, United States District Court, Southern District of California, Case No. 3:24-cv-00753; *see also Greenleaf Compassionate Care Center, Inc., v. Matthew Santacroce, et al.,* United States District Court, District of Rhode Island, Case No. 1:23-cv-00282.

In February and March 2023, the House Committee on Business and Labor held a work group to discuss the impact of HB 3183. For the first time, the implications of HB 3183 on the NLRA were discussed. Further analysis was required.  Scott Decl. ¶ 11, Ex. 4. At the request of Representative Paul Hovey, Senior Deputy Legislative Counsel Jessica A. Santiago was tasked with determining whether the NLRA preempted the state from enacting portions of HB 3183. A copy of Ms. Santiago's letter is attached as Exhibit 5. Ms. Santiago determined that if HB 3183 and the -3 amendments to HB 3183 were enacted, it would "most likely be preempted under preemption principles outlined in *San Diego Bldg. Constr. Trades Council v. Garmon,* 359 U.S.

PAGE 5 -    PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

236, 79 S. Ct. 773 (1959), and under *Int'l Assoc. of Machinists v. Wis. Emp. Rel. Comm'n*, 427 U.S.

132, 96 S. Ct. 2548 (1976). Scott Decl. ¶ 12, Ex. 5.

> For the reasons stated above, we believe that the language of HB 3183, either as introduced or as amended by the -3 amendments, attempts to regulate activities that are, at the very least, arguably protected or prohibited under the NLRA and would most likely be preempted under the *Garmon* rule. We also believe that the provisions under section 2 (2)(b) conditioning cannabis-related licensure and renewal upon the entering of a labor peace agreement would contravene the principles set forth in *Machinists* by removing a labor organization's ability to engage in activities that were meant to be left unregulated.

Scott Decl. ¶ 12, Ex. 5.

Accordingly, HB 3183 died in committee upon adjournment in June 2023.

However, the story does not end there. In July 2024, UFCW 555 was instrumental in qualifying the United for Cannabis Workers Act for the November 2024 general election ("Measure 119").[1] Measure 119 ensures that licensed cannabis businesses enter into labor peace agreements with bona fide labor organizations. The NLRA commonly refers to these as "neutrality agreements." The relevant problematic provisions of HB 3183 are similar to Measure 119. Measure 119 is attached as Exhibit 6.

---

[1] UFCW 555 secured the necessary signatures to present Measure 119 on the November 2024 Ballot. https://www.ufcw555.org/ip35-submitted/

PAGE 6 -    PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

(g) 'Labor peace agreement' means an agreement under which, at a minimum, an applicant or licensee agrees to remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the licensee about the rights afforded to such employees under ORS 663.110.

(h) 'Licensee' means a holder of a license or certification issued under ORS 475C.085, 475C.097, 475C.125, 475C.133, 475C.289 or 475C.548.

(i) 'Strike' has the meaning given that term in ORS 662.205.

(2) In addition to and not in lieu of any other requirement for licensure or certification, or renewal of a license or certification under ORS 475C.085, 475C.097, 475C.125, 475C.133, 475C.289 or 475C.548 with which an applicant must comply, the Oregon Liquor and Cannabis Commission shall require the applicant to submit, along with an application for a license or certification or renewal of a license or certification:

(a) A signed labor peace agreement entered into between the applicant and a bona fide labor organization actively engaged in representing or attempting to represent the applicant's employees; or

(b) An attestation signed by the applicant and the bona fide labor organization stating that the applicant and the bona fide labor organization have entered into and will abide by the terms of a labor peace agreement.

Scott Decl. ¶ 13, Ex. 6.

While Plaintiffs do not challenge Measure 119's ballot measure description, the intent of Measure 119 is clear, a "yes" vote would require cannabis retailers and processors to remain neutral regarding unionization. It would also punish cannabis retailers and processors by license revocation or denial if a labor peace agreement was not executed. A copy of Measure 119's ballot description is attached as Exhibit 7.

### Proposed by Initiative Petition

## Measure 119

### Cannabis retailers/processors must remain neutral regarding communications to their employees from labor organizations; penalties

**Result of "Yes" Vote:** "Yes" vote requires cannabis retailers/processors to agree to remain neutral when labor organizations communicate with employees about collective bargaining rights; licensure/certification penalties possible.

**Result of "No" Vote:** "No" vote retains current labor laws; no requirement that cannabis retailers/processors agree to remain neutral on communications between their employees and labor organizations.

Scott Decl. ¶ 14, Ex. 7.

PAGE 7 -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

On November 5, 2024, Measure 119 was approved and took effect on December 5, 2024. Measure 119 is to be codified under ORS 475C.005 to 475C.525, Oregon's cannabis regulatory statutes, and is to be enforced by Defendants through the OLCC. ORS 475C.017.

## D.    The Specifics of Measure 119

Measure 119 applies to applications for licenses and certifications and renewal licenses and certifications received by the OLCC on or after December 5, 2024. Due to the caps and moratorium in effect by Governor Kotek, Measure 119 essentially applies only to renewal licenses. Measure 119 applies to processor, retailer, medical (processor), medical (retailer), researchers (certification), and laboratory cannabis licenses and certifications defined under ORS 475C.085, 475C.097, 475C.125, 475C.133, 475C.289, and 475C.548, referred to hereinafter as "the Licensees."

At issue here, Measure 119 contains a provision that mandates the Licensees to contract with a "bona fide labor organization" under a "[l]abor peace agreement" ("LPA"), reprinted below from Exhibit 6.

> (2) In addition to and not in lieu of any other requirement for licensure or certification, or renewal of a license or certification under ORS 475C.085, 475C.097, 475C.125, 475C.133, 475C.289 or 475C.548 with which an applicant must comply, the Oregon Liquor and Cannabis Commission shall require the applicant to submit, along with an application for a license or certification or renewal of a license or certification:
>
> (a) A signed labor peace agreement entered into between the applicant and a bona fide labor organization actively engaged in representing or attempting to represent the applicant's employees; or
>
> (b) An attestation signed by the applicant and the bona fide labor organization stating that the applicant and the bona fide labor organization have entered into and will abide by the terms of a labor peace agreement.

Scott Decl. ¶ 13, Ex. 6.

Measure 119 mandates the Licensees to submit an executed LPA or an attestation that an LPA was executed with a bona fide labor organization at the time of the Licensees' licensure renewal. Licensees must then comply with the terms of the LPA. Plaintiffs are aware of only two

PAGE 8 -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

"bona fide labor organizations" in the State of Oregon that will enter into an LPA with the

Licensees at this time, UCFW 555 and the Teamsters. Yet, there are over 200 affiliated local unions

in the state. https://olmsapps.dol.gov/query/getOrgQry.do.[2]  Born Decl. ¶ 5.

Measure 119 also mandates that at minimum, under the terms of the LPA, the Licensees

agree "to remain neutral with respect to a bona fide labor organization's representatives

communicating with employees" of the rights afforded under ORS 663.110, the right to self-

organization, to join a labor organization and to bargain collectively, among other things.

Measure 119, Section 3(1)(g), is reprinted below from Exhibit 6.

> (g) 'Labor peace agreement' means an agreement under which, at a minimum, an applicant or
> licensee agrees to remain neutral with respect to a bona fide labor organization's representatives
> communicating with the employees of the applicant or the licensee about the rights afforded to such
> employees under ORS 663.110.

Scott Decl. ¶ 13, Ex. 6.

Furthermore, if an LPA is terminated, the Licensee has only 30 days to enter into another

LPA or be subject to suspension, revocation, and fines. Scott Decl. ¶ 13, Ex. 6. Given the dearth

of "bona fide labor organizations" willing to enter into LPAs, the Licensees, including Plaintiffs,

are under a constant threat of licensure revocation and fines. For those Licensees that renew

without an LPA, it is grounds for the commission to deny the renewal application. Scott Decl. ¶ 13,

Ex. 6.

---

[2] UFCW, and other AFL-CIO affiliated unions, such as the International Brotherhood of Electrical
Workers, have represented to licensees that AFL-CIO has granted UFCW exclusive authority to
enter into LPAs with licensees. Born Decl. ¶ 5.

PAGE 9 -   PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

E.    **The Active Enforcement of Measure 119 as Approved**

On November 18, 2024, the OLCC issued the "Recreational Marijuana Program Compliance Education Bulletin," Bulletin number CE2024-05 ("Bulletin") which updated the Bulletin on November 26, 2024. A copy of the Bulletin is attached as <u>Exhibit 8</u>. OLCC's Bulletin confirmed Measure 119's mandate. The OLCC requires the Licensees to include a signed LPA, or an attestation that one has been signed and for which the terms will be abided by with their license renewals. Scott Decl. ¶ 15, Ex. 8. The OLCC provided a sample attestation form for the Licensees to use. *Id.*

On January 14, 2025, the OLCC provided an updated Bulletin as to the enforcement of Measure 119, Bulletin number CE2025-01 ("Bulletin 2"). Bulletin 2 is attached as <u>Exhibit 9</u>. OLCC's Bulletin 2 clarified that all the Licensees are required to execute an LPA even if they do not have employees or if their employees do not want to unionize. Scott Decl. ¶ 16, Ex. 9. OLCC's Bulletin 2 also warned the Licensees who do not submit an executed LPA or attestation with the renewal application are at risk of losing their license or certification. *Id.* Failure to comply with Measure 119, Section 2(a)-(b), or the terms of the LPA, is grounds for OLCC to deny a licensure or certification as expressly stated under Measure 119. *Id.* The OLCC's Bulletin 2 also cautioned that Licensees are required to follow all OLCC statutes and rules. *Id.* Should the LPA violate any of those rules, it is at the Licensees' own risk. *Id.* The OLCC will not excuse the Licensees from potential disciplinary action due to an improper LPA. *Id.*

F.    **The Harm Imposed Upon Plaintiffs and Oregonians**

Plaintiff Ascend is located at 13836 NE Sandy Blvd., Portland, Oregon 97230, which is in northeast Portland in the Argay neighborhood. Born Decl. ¶ 2. Ascend is a recreational marijuana

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

retailer defined by ORS 475C.097. Born Decl. ¶ 3. It sells general use cannabinoid products, concentrates, and extracts to adults over the age of 21. Born Decl. ¶ 4. Ascend's recreational retailer license with the OLCC is 050-1013413CA5B. Born Decl.¶ 3. Ascend also has the following endorsements: marijuana home delivery and medical marijuana retailer. *Id.* Ascend's retailer license expires on February 18, 2025. Born Decl. ¶ 10.

Ascend was forced to renew without entering into an LPA after numerous attempts to find a "bona fide labor organization" were unsuccessful, or the terms of the LPA presented would require Ascend to violate federal and state law to renew its license. Born Decl. ¶¶ 5-9. Ascend was notified that other unions could not assist with the LPA, as it was "555 territory." Born Decl. ¶ 5.



Born Decl. ¶ 5.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

On February 4, 2025, Ascend received communication from the OLCC that it could not process its license renewal until an LPA or attestation was submitted per Measure 119. Born Decl. ¶ 10. The communication from OLCC is provided below.

From: <no-reply@camp.olcc.online>
Date: Tue, Feb 4, 2025, 11:37 AM
Subject: OLCC - Request Additional Information
To: <

Request Additional Information

Bret Born, to process your application we will need the following additional information:

1) Thank you for your MJ License renewal. Unfortunately, we cannot process it until you have uploaded a signed labor peace agreement or attestation between the licensee and a labor organization. This is a voter initiate measure and OLCC cannot provide recommendations as we need to remain neutral. Once you submit a signed labor peace agreement or attestation, we can complete your license renewal. I have attached the compliance bulletins to this email.

Born Decl. ¶ 10.

Without an LPA, Ascend will be forced to withdraw its renewal application or spend substantial time and money in attorney fees for representation at a contested case proceeding that will ultimately reach the same conclusion we can reach today, loss of licensure. Born Decl. ¶ 11; Scott Decl. ¶ 13, Ex. 6. The contested case proceeding process is unlikely to determine the enforceability of Measure 119. *See generally* OAR 845-003-0331 (3)(b). Thus, Ascend has no choice but to seek intervention through the courts to stop the enforcement of Measure 119. Ascend is at risk of licensure revocation, which will impact not only Ascend but also its patrons who rely on Ascend for their medical marijuana needs, some of whom are of the most at-risk populations who cannot travel far for healthcare, prescriptions, or treatments. Born Decl. ¶ 14. Licensure revocation due to Measure 119 will impede Oregonians' access to healthcare even if an unintended

PAGE 12 - PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

casualty of Measure 119. Ascend also serves a predominantly lower-income population of Oregonians for recreational and medical marijuana needs. Born Decl. ¶ 13. Items are kept reasonably priced for its patrons.  *Id.*

Ascend has recently invested $47,000 to provide an online ordering platform and delivery service for patrons pursuant to the OLCC's Metric or cannabis tracking system requirements. Born Decl. ¶ 16. Ascend does well over $500,000 in annual sales, and in losing its license will cause eight employees to lose their jobs, health benefits, college reimbursement, and company car to attend college. Born Decl. ¶ 17. As a local business owner, Ascend's owner and family will lose their main source of income for which substantial time and money has been invested. Born Decl. ¶ 17. Due to the current moratorium and caps on cannabis licenses, should Ascend lose its license, it may never have the ability to apply for licensure again. Born Decl. ¶ 15. Measure 119 forces cannabis employers to choose between a license or their constitutional rights and should not be enforced. Born Decl. ¶ 18.

Bubble's Hash is a recreational marijuana processor defined by ORS 475C.085. Haley Decl. ¶ 3. It processes marijuana into usable edibles and concentrates for sale to recreational marijuana retailers. *Id.* Bubble's Hash's recreational processor license with the OLCC is 030-10229496F53. *Id.* It has the following endorsements: concentrate processor, edible processor, industrial hemp, and topical processor. *Id.* Bubble's Hash's license expires on May 22, 2025. Haley, Decl. ¶ 4.

Following the approval of Measure 119, it was evident that more was to be known about the requirements and implications of Measure 119 for Bubble's Hash to renew its license in May 2025. Haley Decl. ¶ 6. Specifically, Bubble's Hash's employee called the UFCF 555, but they

PAGE 13 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

failed to respond. Haley Decl. ¶ 7. Seminars on the impact of Measure 119 were attended by Bubble's Hash's employees who learned of the constitutional violations Measure 119 implicates. Haley Decl. ¶ 8. Due to this, Bubble's Hash filed a complaint with the National Labor Relations Board ("NLRB") on November 9, 2024. Haley Decl. ¶ 9. The NLRB responded on January 16, 2025, claiming that it lacked jurisdiction because Bubble's Hash is one of the processors in Oregon not subject to its jurisdiction due to sales. Haley Decl. ¶ 9. Bubble's Hash is now forced to comply with Measure 119 and negotiate with unions without the full force and effect of the NLRA, like other processors. Haley Decl. ¶ 10. Otherwise, Bubble's Hash will be forced to renew its license without an LPA, which will be revoked. Haley Decl. ¶¶ 11-12. Bubble's Hash would then have to lay off two employees and lose approximately $435,000 in start-up costs. Haley Decl. ¶ 11. Measure 119 should be enjoined. Haley Decl. ¶ 13.

## G.     Legal Standard

"The same legal standard applies to temporary restraining orders and preliminary injunctions sought pursuant to Federal Rule of Civil Procedure 65." *Too Marker Products, Inc. v. Shinhan Art Materials, Inc.*, 2009 WL 4718733 at *2 (D. Or. 2009).  "The basic function of a preliminary injunction is to preserve the *status quo* pending a determination of the action on the merits." *Chalk v. U.S. Dist. Ct. Cent. Dist. of Cal.*, 840 F.2d 701, 704 (9th Cir. 1998). "A plaintiff seeking a [temporary or] preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1218 (D. Or. 2021). A plaintiff must "make a showing

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

on all four prongs" of the *Winter* test, but a court may employ a "sliding scale" approach in weighing the four factors. *All For the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). "The elements of the preliminary injunction test must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). Issuing a temporary or preliminary injunction is a matter of discretion. *Patagonia Area Res. All. v. U. S. Forest Serv.*, 2024 U.S. App. LEXIS 11746, at *2 (9th Cir. May 15, 2024).

> **1.    Plaintiffs are likely to succeed on the merits.**

To satisfy the first element of the standard for injunctive relief, it is not necessary for the moving party to "prove his case in full." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 1834, 68 L. Ed. 2d 175 (1981)—or show they are "more likely than not" to prevail. *Leiva–Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Instead, a party need only demonstrate a "fair chance of success on the merits" or raise questions "serious enough to require litigation." *Benda v. Grand Lodge of the Int'l Ass'n of Machinists & Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). If a plaintiff pursues a claim for constitutional violation and shows that he is likely to prevail on the merits, that will almost always demonstrate irreparable harm. *Baird v. Bonta,* 81 F.4th 1036, 1042 (9th Cir. 2023).

Plaintiffs are likely to succeed on the merits for numerous constitutional reasons including that Measure 119 is preempted by the NLRA, is void for vagueness, restrains speech, violates equal protection laws and the freedom to contract.

PAGE 15 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

### i.        Preemption standards under the NLRA.

The laws of the United States are the "supreme Law of the Land." U.S. Const., Art. VI, cl. 2. State laws that are found to conflict with federal law are treated as "without effect" and preempted. *Maryland v. Louisiana*, 451 U.S. 725, 728, 101 S. Ct. 2114, 2129, 68 L. Ed. 2d 576 (1981). Under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* ("NLRA"), the United States Supreme Court has found that to effectuate federal labor policy, Congress intended to preempt state laws under two principles of preemption, named after their respective cases— *Garmon* and *Machinists. Idaho Bldg. & Const. Trades Council, AFL-CIO v. Inland Pac. Chapter of Associated Builders & Contractors, Inc.,* 801 F.3d 950, 956 (9th Cir. 2015).

Under *Garmon*, when "an activity is *arguably* subject to [Section] 7 or [Section] 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board[.]" *San Diego Bldg. Trades Council, Millmen's Union, Loc. 2020 v. Garmon*, 359 U.S. 236, 245, 79 S. Ct. 773, 780, 3 L. Ed. 2d 775 (1959) (emphasis added). State courts cannot "regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Wisconsin Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.,* 475 U.S. 282, 286, 106 S. Ct. 1057, 1061, 89 L. Ed. 2d 223 (1986). Under *Machinists*, the NLRB and the states are not allowed to regulate activity that Congress intended to be "unregulated because it is left 'to be controlled by the free play of economic forces.'" *Chamber of Com. of U.S. v. Brown,* 554 U.S. 60, 65, 128 S. Ct. 2408, 2412, 171 L. Ed. 2d 264 (2008); *quoting Machinists v. Wisconsin Employment Relations Comm'n,* 427 U.S. 132, 140, 96 S. Ct. 2548, 49 L.Ed.2d 396 (1976). Measure 119 is preempted under both *Garmon* and *Machinists* as Measure 119 regulates activity clearly within

PAGE 16 - PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

the scope of the NLRA and it regulates activity where the NLRA has determined it and the states should not intervene.

> **(a)    Measure 119 is preempted under *Garmon* as it attempts to regulate activity subject to the NLRA.**

Measure 119 essentially mandates labor peace agreements amongst applicants and renewal licensees in the recreational cannabis industry in the State of Oregon. For Licensees who fail to renew their cannabis license with proof of a signed LPA with a bona fide labor organization, the OLCC can deny licensure. By compelling a cannabis employer to sign an LPA as a pre-condition to licensure, Measure 119 has effectively disregarded an employee's right to choose its labor representation, if any at all. 29 U.S.C. §157. Thus, frustrating the NLRA's purpose of regulating activity clearly within the jurisdiction of the NLRB.

For example, under Section 7 of the NLRA, employees have the right to choose to "form, join, or assist labor organizations * * * and shall also have the right to refrain from any or all such activities." 29 U.S.C. §157; *see also* ORS 475C.281 (OLCC also recognizes an employee's "right to form, join, and participate in the activities of a labor organization of the employee's own choosing[.]").  An employer violates Section 8 of the NLRA when it "interferes with, restrains, or coerce employees in the exercise of the rights guaranteed under [Section 7.]" 29 U.S.C. §158 (a)(1). It is also an unlawful practice to "dominate or interfere with the formation or administration of any labor organization[.]" 29 U.S.C. §158 (a)(2). The NLRB has determined that impermissible employer support of a union's organizing efforts of a non-represented workforce can rise to an unlawful practice under Section 8. *Int'l Ass'n of Machinists, Tool & Die Makers Lodge No. 35 v. Nat'l Lab. Rels. Bd.*, 311 U.S. 72, 75, 61 S. Ct. 83, 86, 85 L. Ed. 50 (1940). Further, the union's acceptance of such support can also violate Section 8. *Int'l Ladies' Garment Workers' Union, AFL-*

PAGE 17 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

*CIO v. N. L. R. B.*, 366 U.S. 731, 733, 81 S. Ct. 1603, 1605, 6 L. Ed. 2d 762 (1961). This situation commonly arises when a union and employer sign "neutrality agreements," like the one at issue here, where the terms do not comply with the NLRA and are thus under the purview of the NLRB to invalidate as an unlawful employment practice. *Dana Corp. & Int'l Union,* 356 NLRB 256, 261 (2010). Likewise, by requiring the Licensees, as a precondition to licensure, to enter into a labor peace agreement with a union, Measure 119 requires Plaintiffs to negotiate with a labor organization that does not represent its employees. Measure 119, thus, effectively bypasses the NLRA's requirement that employees have a choice in union representation. 29 U.S.C. §157.

Comparable here, the Seventh Circuit has already struck down a similar county ordinance that required firms with county contracts to negotiate labor peace agreements with any willing union. *Metro. Milwaukee Ass'n of Com. v. Milwaukee Cnty., 431* F.3d 277, 278 (7th Cir. 2005). The *Metro. Milwaukee* court found the ordinance as preempted when it applied the *Boston Harbor*, 507 U.S. 218, principal of a state's interest as a buyer of services. Significantly, the *Metro. Milwaukee* court also noted that had the county not been a party to the contracts, the ordinance would have been preempted as regulating activity under the NLRA. *Metro. Milwaukee Ass'n of Com. v. Milwaukee Cnty.,* 431 F.3d 277, 278 (7th Cir. 2005). Here, Defendants are not parties to the contracts between the Licensees and the union. For purposes of Measure 119, Defendants are not engaged in business or providing public funds. The only purpose of Measure 119 is to regulate labor activity subject to the NLRA and the jurisdiction of the NLRB.

More troubling, the definition of an LPA is "an agreement under which, at a minimum, an applicant or licensee agrees *to remain neutral* with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or licensee about the rights

PAGE 18 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

afforded to such employees under ORS 663.110." (emphasis added).  Yet, under the NLRA employers have the right to express views that are for or even against unionization, so long as the employer's expression does not contain a "threat of reprisal or force or promise or benefit." 29 U.S.C. §158 (c); *N. L. R. B. v. Gissel Packing Co.*, 395 U.S. 575, 618, 89 S. Ct. 1918, 1942, 23 L. Ed. 2d 547 (1969); ORS 663.160.  Measure 119 forces, at a minimum, that Plaintiffs and Licensees take a neutral stance with respect to unionization. Thus, under *Garmon*, Measure 119 is preempted as it attempts to constrain and limit the NLRA's reach by providing its own state regulatory scheme to activities prohibited and protected under the NLRA.

> **(b)     Measure 119 is preempted under *Machinists* as it attempts to regulate activities where the NLRA has left that to the economic forces that may be.**

The NLRA prohibits states from regulating areas that the Act and the NLRB have left "to be controlled by the free play of economic forces." *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Wisconsin Emp. Rels. Comm'n*, 427 U.S. 132, 144, 96 S. Ct. 2548, 2555, 49 L. Ed. 2d 396 (1976) (the union's bargaining tactics to secure no overtime work for its members could not be disturbed by the state through a cease-and-desist order). Together, *Garmon* and *Machinists,* preempt state and local policies that would otherwise balkanize the "integrated scheme of regulation" and disrupt the balance of power between labor and management embodied in the NLRA. *Golden State Transit Corp. v. City of Los Angeles (Golden State I ),* 475 U.S. 608, 613–14, 106 S.Ct. 1395, 89 L.Ed.2d 616 (1986).

Instead, Measure 119 takes away an employer's pre-unionization bargaining rights and economic leverage by compelling licensees to sign an LPA that muzzles the employer. The NLRA has purposefully left to the employer and the union whether to agree to enter into an LPA, and in

PAGE 19 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

so doing, gives the employer the potential economic leverage to exact concessions in exchange for the agreement to remain neutral. By forcing licensees to agree to neutrality, Measure 119 impermissibly changes that balance of economic power in direct contention with *Machinists* and thus the Commerce Clause.

The Ninth Circuit has opined that, when a state or local government is acting as regulator and not market participant, as here, it may not impose a requirement that employers enter into labor peace agreements with unions. *Airline Service Providers Ass'n v. Los Angeles World Airports*, 873 F.3d 1074, 1085 (9th Cir. 2017). While the Ninth Circuit in that case ultimately upheld the City's requirement that businesses execute labor peace agreement, it did so solely on the exception to the general rule of preemption under the market participant doctrine. As Judge Tallman observed in dissent, labor peace agreements pose just the type of interference in labor-management relations *Machinists* preemption prohibits. The substance of labor negotiations, and the results therefrom, are among those areas Congress intentionally left to the free play of economic forces when it legislated in the field of federal labor law. *See  Golden State Transit Corp. v. City of Los Angeles,* 475 U.S. 608, 613–14, 106 S. Ct. 1395 (1986). (describing the NLRA as providing only "a framework for the negotiations"). The negotiation of an LPA, no less than that of a CBA, has been intentionally left to the free play of economic forces.

Moreover, the free play is not free when one party is forced to fight with one hand tied behind its back because it is required by law to agree to remain silent. The NLRA permits employers to express their opinions regarding unionization as well as facts and experiences. 29 U.S.C.§158(c). As long as the employer does not threaten employees, interrogate them about union activities, spy on them, or make promises, the employer is free to interact with its employees.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

When an employer is forced by law to enter into an LPA that muzzles the employer, this balance of economic power is impermissibly upset. By mandating a labor peace agreement for licensure, Defendants are regulating labor where the NLRA has intentionally left it unregulated for the control of "the free place of economic forces." For this reason, Measure 119 is also preempted under the *Machinists* preemption principle.

ii.        **Measure 119 is void for vagueness.**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L.Ed.2d 222 (1972). Vague laws are invalid for two reasons: lack of fair notice and arbitrary and discriminatory enforcement. *Sessions v. Dimaya*, 584 U.S. 148, 156, 138 S. Ct. 1204, 1212, 200 L. Ed. 2d 549 (2018). If, however, First Amendment freedoms are at stake, like they are here, then a "greater degree of specificity and clarity of laws is required." *Kev, Inc. v. Kitsap Cnty.,* 793 F.2d 1053, 1057 (9th Cir. 1986). "Fair notice" considers whether a statute "fails to provide a person of ordinary intelligence fair notice of what is prohibited." *Hill v. Colorado*, 530 U.S. 703, 732, 120 S. Ct. 2480, 2498, 147 L. Ed. 2d 597 (2000). Meanwhile arbitrary and discriminatory enforcement delegates "basic policy matters to policeman, judges, and juries for resolution on an ad hoc and subjective basis." *Grayned,* 408 U.S. at 109. These tests are applied with consideration for the type of enactment at issue, where more stringent vagueness tests are applied if constitutionally protected rights are threatened or there is a lack of scienter requirement to mitigate vagueness. *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.,* 455 U.S. 489, 499, 102 S. Ct. 1186, 1193–94, 71 L. Ed. 2d 362 (1982).

PAGE 21 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

A more stringent analysis is justified. Measure 119 does not contain scienter language, and it does threaten the exercise of constitutionally protected rights, including speech. *Vill. of Hoffman Ests,* 455 U.S. at 499. Furthermore, it is unlikely that the OLCC or an administrative process will provide an advisory opinion as to the interpretation of the statute. *Id.* In fact, the OLCC has already declined to participate when issues related to the meaning of LPA were raised, including when licensees were presented with LPA terms that violated state laws. Scott Decl. ¶ 16, Ex. 9. This court should apply a stringent standard when evaluating Measure 119 for vagueness.

Measure 119 fails to define or sufficiently define key terms and processes, leaving the Licensees, including Plaintiffs, to guess as to how to comply with Measure 119 when presented with one-sided terms that violate the OLCC's rules and the NLRA's stance on neutrality, thus subjecting Plaintiffs and the Licensees to a lack of fair notice and arbitrary enforcement. As to the definition of "Labor peace agreement," it is subject to broad and unreasonable interpretation and could include anything demanded by a union at any time that is not facially consistent with Measure 119 or federal and state laws. By its definition, it sets forth a "minimum" requirement of neutrality. However, its definition suggests to Plaintiffs and other licensees that they are required to agree to further terms but it neither expressly nor clearly defines what that could entail. Furthermore, there is no dispute resolution process identified or required should the Licensees and the union fail to come to any agreement. This provision lacks fair notice and encourages discriminatory enforcement as any term could be considered a part of the labor peace agreement as dictated by the union and without regard to existing and enforceable laws.

The "Licensee" definition is also vague as it fails to carve out any exception for those not subject to the purview of the NLRA as it does for agricultural employees. Scott Decl. ¶ 13, Ex. 6.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

Thus, the Licensees that have no expectation of dealing with a labor organization are left to guess as to whether Measure 119 applies to them at all. This portion of the definition creates another opportunity for discriminatory enforcement as it is left open for interpretation, and it fails to apprise the Licensees as to fair notice. Likewise, the definition of "bona fide labor organization" is incomplete and fails to inform the Licensees of whom is recognized as engaged in interstate commerce for purposes of satisfying the requirements of Measure 119. Since these definitions are not clearly defined and subjected to interpretation of the reader, it is ripe for serious discriminatory enforcement due to the vague and overly general terms contained within.

Moreover, Measure 119 implicates First Amendment protections. *Supra 1(i)(b)(iii)*. Statutes that chill a "substantial amount of legitimate speech" are void. *California Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1152 (9th Cir. 2001). Measure 119 is void because it has the chilling effect on speech that is permissible, such as discussing the pros and cons of unionization. 29 U.S.C. §158; ORS 663.160. Measure 119 expressly restrains employers to remain neutral. Thus, employers will remain neutral for fear of violating Measure 119 thus chilling a substantial amount of permissible speech. Plaintiffs are likely to succeed on its challenge.

### iii.     Measure 119 violates free speech protections.

The First Amendment applies to the states through the Fourteenth Amendment, *see Thornhill v. State of Alabama,* 310 U.S. 88, 95, 60 S. Ct. 736, 740, 84 L. Ed. 1093 (1940), and provides that "Congress shall make no law ... abridging the freedom of speech ...." U.S. Const. Amend. I. The First Amendment "prohibits the government from telling people what they must say." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,* 547 U.S. 47, 61, 126 S. Ct. 1297, 1308, 164 L. Ed. 2d 156 (2006). "Restraints on speech on the basis of its content, except in a few limited

PAGE 23 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

categories such as obscenity, defamation, and fighting words, are generally disallowed." *Hobbs v. Cnty. of Westchester*, 397 F.3d 133, 148 (2d Cir. 2005). "The First Amendment's hostility to content-based regulation extends not only to restrictions on particular viewpoints, but also to prohibition of public discussion of an entire topic." *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York*, 447 U.S. 530, 537, 100 S. Ct. 2326, 2333, 65 L. Ed. 2d 319 (1980). Regulation of speech based on its content is "presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 112 S. Ct. 2538, 2542, 120 L. Ed. 2d 305 (1992). Statutes that are on its face content-based are subject to strict scrutiny and will not be upheld unless the state can establish a compelling interest that is narrowly tailored to further that interest. *Victory Processing, LLC v. Fox*, 937 F.3d 1218, 1226 (9th Cir. 2019).

By its express language, Measure 119 is content based. Plaintiffs and the Licensees are commanded "to remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the license about the rights afforded to such employees under ORS 663.110." Scott Decl. ¶ 13, Ex. 6. ORS 663.110 pertains to an employee's right to organization to form, join or assist labor organizations. Thus, Plaintiffs and the Licensees must commit to neutrality related to unionization as a condition precedent to licensure, whether that is an opinion held by Plaintiffs or the Licensees. Measure 119 regulates speech based on its topic. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015). Due to this, the burden shifts to Defendants to prove a compelling interest as to why it requires cannabis employers to remain neutral when discussing unionization and that interest it narrowly tailored. Defendants will not be able to put forth any compelling interest for Measure 119. It was created to advance the interests and message of the unions who speared

PAGE 24 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

headed its passage.  Likewise, compelled speech is not just limited "to the situation in which an individual must personally speak the government's message." *Rumsfeld,* 547 U.S. at 63. Indeed, the Supreme Court has "in a number of instances limited the government's ability to force one speaker to host or accommodate another speaker's message." *Id.* In each such case, however, the Court held that speech was compelled because "the complaining speaker's own message was affected by the speech it was forced to accommodate." *Id.* Measure 119 forces cannabis employers to accommodate the union's message, or at least not interfere with it, despite differing positions. Measure 119 is invalid. *Consol. Edison Co. of New York v. Pub. Serv. Comm'n of New York,* 447 U.S. 530, 544, 100 S. Ct. 2326, 2337, 65 L. Ed. 2d 319 (1980).

The Supreme Court has long recognized that employers have the Constitutional right to express opinions regarding unionization. *N.L.R.B. v. Virginia Elec. & Power Co*., 314 U.S. 469, 62 S. Ct. 344, 86 L. Ed. 348 (1941). After that decision, Congress enshrined these rights into the NLRA itself. Section 8(c) of the NLRA states that "[t]he expressing of any views, argument, or opinion, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit." Measure 119 violates Plaintiff's Constitutional rights to express their opinions to their employees.

### iv.     Measure 119 violates Equal Protection of the Laws.

The Equal Protection Clause mandates that similarly situated persons be treated alike and provides that no state shall "deny to any person within its jurisdiction alike the equal protections of the laws." U.S. Const. Amend. XIV, § 1. It is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.,* 473 U.S. 432,

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

439, 105 S. Ct. 3249, 3254, 87 L. Ed. 2d 313 (1985). The state may not discriminate against classes of people in an "arbitrary or irrational" way or with the "bare . . . desire to harm a politically unpopular group." *City of Cleburne, Tex.,* 473 U.S. at 446-47. This aspirational promise, however, must "coexist with the practical reality" that laws often draw lines between groups of people and those lines naturally advantage some groups while disadvantaging others. *Romer v. Evans,* 517 U.S. 620, 631, 116 S. Ct. 1620, 1627, 134 L. Ed. 2d 855 (1996).

Hence, when considering an equal protection claim, the Court must first determine what level of scrutiny applies and then decide whether the policy at issue survives that level of scrutiny. There are three levels of review: strict scrutiny, intermediate scrutiny, or rational basis review. Laws are subject to strict scrutiny when they discriminate against a suspect class, such as a racial group, *e.g., Grutter v. Bollinger*, 539 U.S. 306, 326 (2003), or when they discriminate based on any classification but impact a fundamental right, such as the right to vote. *See, e.g., Reynolds v. Sims,* 377 U.S. 533, 562 (1964). Laws are subject to intermediate scrutiny when they discriminate based on certain other suspect classifications, such as gender. *Miss Univ. for Women v. Hogan,* 458 U.S. 718, 723 (1982). When no suspect class is involved and no fundamental right is burdened, Courts apply a rational basis test to determine the legitimacy of the classifications. *Olagues v. Russoniello*, 770 F.2d 791, 802 (9th Cir. 1985).

In analyzing Equal Protection claims and the proper level of scrutiny, a court must "identify the state's classification of groups." *Country Classic Dairies, Inc. v. Milk Control Bureau*, 847 F.2d 593, 596 (9th Cir. 1988). Once the classification group is identified, a court must look for a control group. *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1187 (9th Cir. 1995). That is, individuals who are similarly situated to those in the classified group in respects that are relevant

PAGE 26 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

to the state's challenged law. *Ariz. Dream Act Coal. v. Brewer*, 855 F.3d 957, 966 (9th Cir. 2017). If the two groups are similarly situated, the Court determines the appropriate level of scrutiny and applies it. *Ariz. Dream Act Coal.,* 855 F.3d at 969.

Here, Measure 119 distinguishes between cannabis employers (the classification group) and non-cannabis employers (the control group) by forcing cannabis employers into signing labor peace agreements without a rational basis for doing so. But it also goes one step further by distinguishing cannabis employers not under the jurisdiction and protections of the NLRA from those that are. Since Measure 119 differentiates between types of employers, which is not a protected class under the Equal Protection Clause, the appropriate standard of review is the rational basis.

When applying rational basis review, a court must determine whether there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns, Inc.,* 508 U.S. 307, 313, 113 S. Ct. 2096, 2101, 124 L. Ed. 2d 211 (1993). Where there are "plausible reasons" for action, "our inquiry is at an end." *RUI One Corp. v. City of Berkeley*, 371 F.3d 1137, 1154 (9th Cir. 2004) (quoting *Beach Commc'ns, Inc.*, 508 U.S at 313-314).

There is no rational basis for singling out cannabis employers or cannabis employers not subject to the NLRA. Cannabis businesses, like countless other businesses, are economic contributors that create jobs and generate tax revenue. Applying unique labor laws to cannabis employers without justification is an unfair penalty that is harmful to businesses and, by extension, the economy as a whole. Additionally, there are several alternative industries, such as alcohol, tobacco, and pharmaceuticals, which are not forced into signing labor peace agreements.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

Furthermore, Measure 119 made an exception to exclude those who perform agricultural labor and are therefore not covered under the NLRA. *See NLRA's Jurisdictional Standards.* https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/jurisdictional-standards; ORS 663.005; Scott Decl. ¶ 13, Ex. 6.  Yet, Measure 119 failed to apply the same standards to other categories of employers or employees that have no legal requirement to associate with a union in the first place. *Id.; see also* ORS 663.005 (employees are not those employed by parents or spouses or supervisors). Practically speaking, the OLCC has advised that even employers without employees must sign an LPA. Scott Decl. ¶ 16, Ex. 9.  The unique and multi-faceted harm that Measure 119 places on cannabis employers, along with the lack of similar requirements for comparable industries, shows no plausible reason for the application of Measure 119, and it violates the Equal Protection clause.

### v.    Measure 119 improperly infringes on the Right to Contract.

The Contracts Clause states: "No State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const. Art. I, § 10, cl. 1. The Contracts Clause applies to "any kind of contract." *Ashley Sveen v. Kaye Melin*, 584 U.S. 811, 818, 138 S. Ct. 1815, 1821, 201 L. Ed. 2d 180 (2018). The threshold issue is whether the state law has "operated as a substantial impairment of a contractual relationship." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 2722, 57 L. Ed. 2d 727 (1978). In answering that question, courts consider "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Sveen*, 584 U.S. at 819. If these factors evidence a substantial impairment, the court must determine whether the ballot measure is "appropriate" and a "reasonable" advance of "a significant and legitimate public

PAGE 28 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

purpose." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411–412, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983).

By mandating licensure renewal upon execution of an LPA, Measure 119 undermines any bargaining between the cannabis employers and the labor organization. Plaintiffs are coerced to sign agreements as presented and under whatever terms the labor organization desires or risk licensure. Measure 119 fails to provide any dispute resolution process if the bona fide labor organization and the Licensees cannot agree to the terms of the LPA. The Licensees, including Plaintiffs, are left without choice or bargaining power to renew cannabis licenses. Measure 119 has substantially impaired one's basic contract rights. No legitimate public purpose justifies diminishing one's basic contractual rights. Contracts are routinely deemed invalid when presented under duress and coercion. Yet, Measure 119 bypasses these basic and fundamental principles. Measure 119 achieves no significant and legitimate public purpose.

> **2.    If the Court finds Plaintiffs are likely to succeed on the merits, every other injunction factor also weighs in their favor.**

As set forth in detail below, without enjoinment, Plaintiffs will be irreparably harmed as Measure 119 threatens constitutional rights, diminishes basic state contract principles, and threatens Plaintiffs' licensure privileges with licensure revocation. It also limits the ability of Plaintiffs to seek re-licensure in the future, causing financial hardship, loss of jobs and benefits, and access to healthcare of non-parties. Due to this, the balance of equities and public interest weighs heavily in favor of Plaintiffs. The Court should grant Plaintiffs' Motion.

PAGE 29 - PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

      **i.**      **Plaintiffs will be irreparably harmed without a temporary and preliminary injunction.**

Harm is "irreparable" when it cannot "be adequately remedied by money damages and is often permanent or at least of long duration." *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 107 S. Ct. 1396, 1404, 94 L. Ed. 2d 542 (1987). In evaluating irreparable harm when a business pursues an injunction, it may include the "loss of goodwill, reputation, and potential new customers." *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001); *Quoting Killa Bees Distribution LLC v. Left Coast Fin. Sols., Inc.,* No. 3:23-CV-1629-JR, 2024 WL 4664490, at *2 (D. Or. Nov. 4, 2024). In the context of labor negotiations, irreparable harm has been found when bad faith bargaining violations under Section 8 are present and unlikely to be cured by later relief. *Frankl v. HTH Corp.,* 650 F.3d 1334, 1363 (9th Cir. 2011).

Additionally, the Ninth Circuit has repeatedly emphasized: "It is well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Because "constitutional violations cannot be adequately remedied through damages [such violations] therefore generally constitute irreparable harm." *Am. Trucking Ass'ns v. City of Los Angeles*, 559 F.3d 1046, 1059 (9th Cir. 2009). Most courts hold that when a "deprivation of constitutional rights is involved * * * no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023).

Plaintiffs are irreparably harmed by Measure 119's mandatory licensing requirement for the obvious reasons above in that Measure 119 is unconstitutional on many grounds. For example, Plaintiffs' rights are presently violated as they must enter into an LPA that on its face is defined to restrain speech and defeat the NLRA. That alone is enough to demonstrate immediate irreparable harm. Even so, Measure 119 irreparably harms Plaintiffs because:

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

(1)    It violates basic state contract principles that are difficult to unwind:

    a.  Lack of choice or option with bona fide labor organizations.

        i.  There are two unions. Born Decl. ¶ 5.

        ii.  OLCC will not assist or recommend a union. Scott Decl. ¶ 16, Ex. 9.

    b.  Lack of bargaining power, terms are non-negotiable.

        i.  OLCC will not intervene to assist. Scott Decl. ¶ 16, Ex. 9.

        ii.  Many Licensees do not have access to or the means to afford an attorney to negotiate with a union, cloaked in representation.

    c.  Lack of mutual assent to the LPA terms.

        i.  Many Licensees have never negotiated with unions and don't understand what an LPA is or does. Scott Decl. ¶ 15, Ex. 8.

    d.  Lack of voluntary consent to the LPA terms.

        i.  Regardless of whether an employee wants to unionize, or it lacks employees, licensees must execute an LPA. Scott Decl. ¶ 16, Ex. 9.

    e.  LPAs are presented under duress and coercion.

        i.  The face of Measure 119 mandates LPAs, or a Licensee will lose its license. Scott Decl. ¶ 13, Ex. 6.

PAGE 31 - PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

ii. OLCC will refuse licenses without a signed LPA or attestation. Scott Decl. ¶ 16, Ex. 9.

f. Illegality

i. OLCC has acknowledged that certain LPA terms violate OLCC's rules. Yet, OLCC places the risk on Plaintiffs and licensees if the LPAs are signed, which violate its rules. Scott Decl. ¶ 16, Ex. 9.

(2) It provides no dispute resolution process if Plaintiffs or the Licensees and the bona fide labor organization cannot agree to the terms of the LPA, causing delays in licensure renewal. Scott Decl. ¶ 13, Ex. 6.

(3) Despite renewing with an executed LPA or attestation, Plaintiffs and the Licensees will operate under constant threat of licensure revocation because the bona fide labor organization can withdraw at any time. Scott Decl. ¶ 13, Ex. 6. There are only two unions. Born Decl. ¶ 5. At some point, Plaintiffs or the Licensees may not have a labor organization to execute an LPA.

Plaintiffs and Licensees are faced with an immediate and irreparable harm that cannot wait for a decision on the merits. *Boardman v. Pac Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016). Constitutional rights and basic contract principles are at issue now where enforcement of an LPA is presently occurring.

PAGE 32 - PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

Now, should Plaintiffs forgo renewal without an executed LPA or attestation and protect their constitutional rights, as Plaintiff Ascend has done, they are certain to permanently lose their licenses. Scott Decl. ¶¶ 15-16, Exs. 8-9.

(1)    Oregon's caps and moratorium on cannabis licenses will prevent Plaintiffs and other licensees from obtaining a license in the foreseeable future. Scott Decl. ¶ 9, Ex. 2.

(2)    License revocation for lack of LPA will have extreme consequences and unintended effects on Oregonians:

    i.  Plaintiffs will be forced to lay off employees. Born Decl. ¶ 17; Haley Decl. ¶ 11.

    ii.  Plaintiffs will be financially harmed. Born Decl. ¶¶ 15-17; Haley Decl. ¶ 11.

    iii.  Plaintiffs' businesses will be forced to close. Born Decl. ¶ 12; Haley Decl. ¶ 11.

        1.  Ramifications to breaking other contracts, such as leases. Haley Decl. ¶ 12.

    iv.  Oregonians will lose access to healthcare. Born Decl. ¶¶ 13-14.

Plaintiffs are essentially caught in a Catch-22, where no amount of monetary compensation can cure the harm Measure 119 instills upon Plaintiffs and the Licensees. The Court should intervene to enjoin the enforcement of Measure 119. Now, Defendants largely argue that due to the contested case proceeding process, Ascend is not at risk of denial for sixty-plus days and

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

another sixty-plus days for an appeal. Scott Decl. ¶ 8. Yet, the problem with this argument is it fails to consider the amount of time and money cannabis employers must undertake to defend the decision not to renew with an LPA, when the license will ultimately be denied. Born Decl. ¶ 11; Scott Decl. ¶ 13, Ex. 6 (the language of Measure 119 is clear, if there is no LPA provided a licensee will lose its license). Contested case proceedings of a cannabis license, when held by a company, require mandatory representation of an attorney. OAR 137-003-0550. Small businesses do not have a never-ending supply of funds dedicated to this process when faced with making payroll and paying other business expenses and debts. Born Decl. ¶ 11. Ascend, and other Licensees are likely to fold under such financial pressure and submit to an LPA rather than continue any drawn-out procedural process. Ascend requires action now.

### ii.    The balance of equities and public interest weigh in Plaintiffs' favor.

Under the "balance of equities" analysis, a court must "balance the competing claims of injury" and "consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (internal quotation marks and citation omitted). The public interest inquiry, by contrast, "primarily addresses impact on non-parties rather than parties." *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 766 (9th Cir. 2014). When the government is a party, these last two factors of the injunction analysis will merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014); *Cascadia Wildlands v. United States Forest Serv.,* No. 6:21-CV-01225-AA, 2021 WL 6112546, at *7 (D. Or. Dec. 27, 2021). It is always in the "public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012).

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

The balance of equities weighs heavily in favor of Plaintiffs. By enjoining enforcement of Measure 119, Defendants stand little to no injury. Measure 119 added another box for Defendants to check when renewing licenses as part of its standard process to grant or deny renewal applications. OAR 845-005-0314; OAR 845-005-0315. Defendants are not financially impacted and have positioned themselves not to comment on the validity of the LPAs or even assist in finding a bona fide labor organization. Scott Decl. ¶¶15-16, Exs. 8-9. While there may be an interest in protecting a ballot measure enacted by a majority of Oregon voters, the Court should not be persuaded by any such argument. Measure 119 was created for and by unions. Scott Decl. ¶ 11, Ex. 4; Compl. ¶ 31. On its face it drastically favors unions. While Oregonians may have passed Measure 119, its rise is suspect. Instead, Plaintiffs stand to lose the most—constitutional rights, business decisions, income, employees, licensure revocation, participation in their communities, and more. Born Decl. ¶¶ 11-17; Haley Decl. ¶¶ 10-13.

Moreover, public interest also weighs heavily in favor of Plaintiffs. There is a recognized public interest in preventing the violation of constitutional rights. *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Here, numerous rights are at stake of not only Plaintiffs but cannabis employers and employees. Also, many Oregonians rely on Plaintiff Ascend for medical marijuana. Born Decl. ¶¶ 13-14. Medical marijuana is known to treat numerous conditions including the side effects from cancer treatment, chronic pain, Chron's disease, PTSD, and many more. https://www.nccih.nih.gov/health/cannabis-marijuana-and-cannabinoids-what-you-need-to-know Patients with these conditions are among the most vulnerable and may find it difficult to access prescribed treatments. *See Ratnapradipa KL, Jadhav S, Kabayundo J, Wang H, Smith LC.* Factors associated with delaying medical care: cross-sectional study of Nebraska adults. BMC Health Serv

PAGE 35 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

Res. 2023 Feb 4; 23(1):118. PMID: 36739376; PMCID: PMC9899134. ("Access to care is in part dependent upon income and distance to healthcare services.").  Ascend has been a reliable and local source for these patients since 2019. Born Decl. ¶¶ 4, 12-14. While likely unintended, Measure 119 has the downward impact of limiting access to healthcare amongst populations that already struggle to get the care they need. The practical reality is that if Defendants were to revoke every medical marijuana retailer license of those who failed to renew with an LPA or attestation, delay of patient care due to transportation and costs is inevitable. Measure 119 stands as an impediment to healthcare and the health of Oregonians. Defendants should be enjoined from enforcing it. *Williams v. Brown,* 567 F. Supp. 3d 1213, 1229 (D. Or. 2021) (healthcare vaccine mandates serve a public interest to protect the lives and health of the people of Oregon).  Likewise, Licensees or non-parties who have been forced to renew with an LPA are operating under illegal contracts under state and federal law with no recourse. Plaintiffs have established irreparable harm, where the balance of equities and public interest weighs heavily in favor of Plaintiffs to grant this Motion, enjoining the enforcement of Measure 119.

## H.    Security

Fed. R. Civ. P. 65 directs that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Federal courts, however, have discretion over the amount of security and may even dispense with the security requirement altogether. *See Johnson*, 572 F.3d at 1086 ("Rule 65(c) invests the district court with discretion as to the amount of security required, if any."); *Miller v. Heimuller,* No. 3:23-CV-293-SI, 2023 WL 3559529, at *2 (D. Or. May 18,

PAGE 36 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

2023). If a security bond will impede one's access to the courts or if a plaintiff will likely succeed on the success of the merits, then a nominal bond or waiver altogether is justifiable. *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1326 (9th Cir.), *amended*, 775 F.2d 998 (9th Cir. 1985).

Plaintiffs request that the Court waive the bond requirement given the likelihood of success on the merits and the infringement upon constitutional rights or, alternatively, set at a nominal amount.

## I.    Conclusion

For the reasons as outlined above, Plaintiffs request this Court grant its Motion for Temporary Restraining Order and Preliminary Injunction enjoining Defendants from enforcing Measure 119.

**CERTIFICATE OF COMPLIANCE (Word Count)**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 10,186 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

DATED this 17th day of February, 2025.

FISHER & PHILLIPS LLP

*s/ Stephen M. Scott*
Stephen M. Scott, OSB No. 134800
smscott@fisherphillips.com
Todd A. Lyon, OSB No. 076706
tlyon@fisherphillips.com
Janelle W. Debes, OSB No. 211543
jdebes@fisherphillips.com
Phone: (503) 242-4262 / Fax: (503) 242-4263

Attorneys for Plaintiffs

PAGE 37 -  PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 53830214.2

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date written below, I caused a true and correct copy of the foregoing document to be served on the following attorneys via the method(s) indicated:

Sadie Forzley                                   ☒  **Court's CM/ECF system:**
Senior Assistant Attorney General                   sadie.forzley@doj.oregon.gov
Yougwoo Joh                                         youngwoo.joh@doj.oregon.gov
Assistant Attorney General
OREGON DEPARTMENT OF JUSTICE            ☒  **By First-Class Mail**
100 SW Market Street
Portland, OR 97201

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 17th day of February, 2025.


_s/ Stephen M. Scott_
Stephen M. Scott, OSB No. 134800

Of Attorneys for Plaintiffs

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262