Stephen M. Scott, OSB No. 134800
smscott@fisherphillips.com
Todd A. Lyon, OSB No. 076706
tlyon@fisherphillips.com
Alexander A. Wheatley, OSB No. 105395
awheatley@fisherphillips.com
Janelle W. Debes, OSB No. 211543
jdebes@fisherphillips.com
FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262 Telephone
(503) 242-4263 Facsimile

    Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CASALA, LLC, dba Bubble's Hash, an Oregon limited liability company; and REC REHAB CONSULTING LLC, dba Ascend Dispensary, an Oregon limited liability company,<br><br>                    Plaintiffs,<br><br>        v.<br><br>TINA KOTEK, Governor of the State of Oregon, in her official capacity; DAN RAYFIELD, Attorney General of the State of Oregon, in his official capacity; DENNIS DOHERTY, Chair of the Oregon Liquor and Cannabis Commission, in his official capacity; and CRAIG PRINS, the Executive Director of the Oregon Liquor and Cannabis Commission, in his official capacity,<br><br>                    Defendants. | Case No. 3:25-CV-00244-SI<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>**ORAL ARGUMENT HEARING:**<br>    April 29, 2025, at 1:30 p.m. |

# TABLE OF CONTENTS

Page

I. SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION ................................................... 1

    A.    Introduction. ...................................................................................... 1

    B.    Summary of Memorandum of Law Arguments. .................................. 2

II. MEMORANDUM OF LAW ............................................................ 5

    A.    The NLRA Applies to Cannabis Employers as Already Determined by the NLRB. ........................................................ 5

        1.    The NLRB's jurisdiction is broad, encompassing any employer engaged in interstate commerce. ........................................... 5

        2.    The NLRB assumes jurisdiction over cannabis employers who meet certain gross annual sales and who do not solely employ agricultural workers. ................................ 9

    B.    Plaintiffs Are Employers Engaged in Interstate Commerce Despite Marijuana's Classification Under the Controlled Substances Act as a Schedule I Substance. ................................................... 10

        1.    Plaintiffs are employers as defined by the NLRA. .................... 11

        2.    The NLRA has never limited its jurisdiction to lawful activity like other federal laws have done. ................................ 13

        3.    Oregon's cannabis industry is engaged in interstate commerce. .............. 16

        4.    Measure 119 recognizes the cannabis industry is engaged in interstate commerce. .............................................. 20

    C.    Numerous Other Federal Laws Apply to the Cannabis Industry for Which the Federal Government Acts to Protect. ................................. 21

        1.    Cannabis employers are not excused from other federal laws. ................. 21

        2.    The federal government protects the cannabis industry. ......................... 24

    D.    Any Argument Made by State Defendants, Whether It Be Illegality or Unclean Hands, Will Fail. .............................................. 28

        1.    States Defendants are unlikely to succeed on any illegality argument because this lawsuit does not implicate the Controlled Substances Act. .................................. 29

        2.    The remedy sought does not compel either party to violate the Controlled Substances Act. .................................... 31

PAGE ii - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

3.    The Court should proceed to decide the matter without regard for the illegality doctrine. ............................................................. 33

4.    The Southern District of California got *CTRL ALT DESTROY* wrong. The Unclean Hands Doctrine is not applicable to this matter before the Court. ...................................................................... 35

E.    Measure 119 Must Be Enjoined in the Entirety. It Cannot Be Severed. .............. 39

III.    CONCLUSION.................................................................................................................. 41

PAGE iii -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Healthcare Admin. Servs., Inc. v. Aizen*,
  285 A.3d 461 (Del. Ch.) ............................................................................... 35

*In re Arenas*,
  535 B.R. 845 (B.A.P. 10th Cir. 2015) .......................................................... 14

*Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*,
  173 F. Supp. 3d 363 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F.
  App'x 256 (5th Cir. 2018) ........................................................................... 35

*Bassidji v. Goe*,
  413 F.3d 928 (9th Cir. 2005) ....................................................................... 34

*Brewster v. City of Los Angeles*,
  672 F. Supp. 3d 872 (C.D. Cal. 2023) ......................................................... 36

*Buffington v. McDonough*,
  143 S. Ct. 14, 214 L. Ed. 2d 206 (2022) ..................................................... 28

*Burton v. Maney*,
  610 B.R. 633 (B.A.P. 9th Cir. 2020) ........................................................... 29

*Bustamente v. Uno Café & Billiards, Inc.*,
  No. 1:15-cv-04192-FB-RML, 2018 WL 2349507 (E.D.N.Y. May 23, 2018) ......................... 15

*City of Philadelphia v. New Jersey*,
  437 U.S. 617 (1978) ..................................................................................... 16

*Ctrl Alt Destroy v. Elliott*,
  No. 24-CV-753 TWR (AHG), 2025 WL 790963 (S.D. Cal. Mar. 12, 2025) ............ 35, 36, 37

*Davis v. Michigan Dep't of Treasury*,
  489 U.S. 803, 109 S. Ct. 1500, 103 L. Ed. 2d 891 (1989) ......................... 39

*Dodd v. State Indus. Acc. Comm'n*,
  211 Or. 99, 311 P.2d 458 (1957) ................................................................ 39

*Doe v. Lombardo*,
  No. 3:24-CV-00065-MMD-CSD, 2024 WL 4536772 (D. Nev. Oct. 18, 2024) ................... 24

PAGE iv - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

*Donovan v. Burgett Greenhouses, Inc.*,
759 F.2d 1483 (10th Cir. 1985) ................................................................15

*Dream Games of Arizona, Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) ...................................................................30

*E.E.O.C. v. Recruit U.S.A., Inc.*,
939 F.2d 746 (9th Cir. 1991) ...................................................................36

*Emerald Steel Fabricators, Inc. v. BOLI*,
230 P.3d 518 (Or. 2010) .........................................................................13

*Ewell v. Daggs*,
108 U.S. 143, 2 S. Ct. 408, 27 L. Ed. 682 (1883) ...................................30

*Finch v. Treto*,
606 F. Supp. 3d 811 (N.D. Ill. 2022), *aff'd in part, dismissed in part,* 82 F.4th
572 (7th Cir. 2023) ..................................................................................16

*Ginsburg v. ICC Holdings, LLC*,
No. 3:16-CV-2311-D, 2017 WL 5467688 (N.D. Tex. Nov. 13, 2017) ...................30

*Gonzales v. Raich*,
545 U.S. 1 (2005) ..........................................................................12, 17

*Greenwood v. Green Leaf Lab LLC*,
No. 3:17-cv-00415-PK, 2017 WL 3391671 (D. Or. July 13, 2017) .....................23

*In re Hacienda Co.*, *LLC*,
647 B.R. 748 (Bankr. C.D. Cal. 2023) .............................................14, 29

*Hale v. State of Ariz.*,
993 F.2d 1387 (9th Cir. 1993) .................................................................11

*Hershey Estates*,
112 N.L.R.B., 1300, 1301 (1955) .......................................................6, 15

*Holman v. Johnson*,
(1775) ) 1 Cowp 341 ..............................................................................29

*Hughes v. Oklahoma*,
441 U.S. 322 (1979)................................................................................17

*James v. City of Costa Mesa*,
700 F.3d 394 (9th Cir. 2012) ..................................................................13

PAGE v -    PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

*James v. United States*,
    366 U.S. 213, 81 S. Ct. 1052, 6 L. Ed. 2d 246 (1961) ............................................22

*In re JJ206, LLC*,
    120 U.S.P.Q. 2d 1568 (T.T.A.B. Oct. 27, 2016) ....................................................13

*Johnson v. Yellow Cab Transit Co.*,
    321 U.S. 383, 64 S. Ct. 622, 88 L. Ed. 814 (1944) ..........................................35, 36

*Kaiser Steel Corp. v. Mullins*,
    455 U.S. 72, 102 S. Ct. 851, 70 L. Ed. 2d 833 (1982) ...........................................30

*Kenney v. Helix TCS, Inc.*,
    939 F.3d 1106 (10th Cir. 2019) ............................................................................23

*Keystone Driller Co. v. Gen. Excavator Co.*,
    290 U.S. 240, 54 S. Ct. 146, 78 L. Ed. 293 (1933) ...............................................31

*Kobey v. United States*,
    208 F.2d 583 (9th Cir. 1953) ................................................................................23

*In re Levenson*,
    560 F.3d 1145 (9th Cir. 2009) ........................................................................32, 33

*Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,
    No. 3:18-CV-01104-HZ, 2020 WL 1855190 (D. Or. Apr. 13, 2020) ....................29

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) ....................................28

*Lucas v. Jerusalem Café, LLC*,
    721 F.3d 927 (8th Cir. 2013) ................................................................................15

*Mil-Ray v. EVP Int'l, LLC*,
    No. 3:19-CV-00944-YY, 2020 WL 3317931 (D. Or. Mar. 17, 2020) ....................40

*In Re Morgan Brown*,
    119 U.S.P.Q.2d 1350 (T.T.A.B. Jul. 14, 2016) ......................................................13

*Museum Assocs. v. N.L.R.B.*,
    688 F.2d 1278 (9th Cir. 1982) ..............................................................................11

*N.L.R.B. v. Anthony Co.*,
    557 F.2d 692 (9th Cir. 1977) ..................................................................................9

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

*N.L.R.B. v. Chapa De Indian Health Program, Inc.*,
  316 F.3d 995 (9th Cir. 2003) ........................................................................12

*N.L.R.B. v. Jones & Laughlin Steel Corp*,
  301 U.S. 1 ............................................................................................................7

*N.L.R.B. v. Reliance Fuel Oil Corp*.,
  371 U.S. 224 (1963)..........................................................................................7

*Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*,
  45 F.4th 542 (1st Cir. 2022)..........................................................................38

*Nebraska v. Colorado*,
  577 U.S. 1211, 136 S. Ct. 1034, 194 L. Ed. 2d 545 (2016)....................19

*New England Power Co. v. New Hampshire*,
  455 U.S. 331, 102 S. Ct. 1096, 71 L. Ed. 2d 188 (1982)........................21

*Northbay Wellness Grp., Inc. v. Beyries*,
  789 F.3d 956 (9th Cir. 2015) ........................................................................36

*NPG, LLC v. City of Portland, Maine*,
  No. 2:20-CV-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020)...................22

*Olive v. Comm'r*,
  792 F.3d 1146 (9th Cir. 2015) ......................................................................22

*Patel v. Quality Inn S.*,
  846 F.2d 700 (11th Cir. 1988) ......................................................................15

*Pauma v. Nat'l Lab. Rels. Bd.*,
  888 F.3d 1066 (9th Cir. 2018) ......................................................................12

*Perez v. United States*,
  402 U.S. 146, 91 S. Ct. 1357, 28 L. Ed. 2d 686 (1971)..........................18

*Peridot Tree, Inc. v. City of Sacramento*,
  24-7196 (9th Cir. Nov. 27, 2024) ...............................................................38

*Peridot Tree, Inc. v. City of Sacramento*,
  94 F.4th 916 (9th Cir. 2024) .........................................................................38

*Peridot Tree, Inc. v. City of Sacramento*,
  No. 2:22-CV-00289-KJM-SCR, 2024 WL 4857648 (E.D. Cal. Nov. 21, 2024) ...................38

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

*Poe v. Ullman*,
    367 U.S. 497, 81 S. Ct. 1752, 6 L. Ed. 2d 989 (1961)............................................................28

*Polk v. Gontmakher*,
    No. 2:18-CV-01434-RAJ, 2020 WL 2572536 (W.D. Wash. May 21, 2020).........................30

*Powell v. United States Cartridge Co.*,
    339 U.S. 497 (1950)................................................................................................................16

*Reed v. Michaud*,
    498 F. App'x 767 (10th Cir. 2012) .........................................................................................24

*In re Rent-Rite Super Kegs West, Ltd.*,
    484 B.R. 799 (Bankr. D. Colo. 2012) .....................................................................................14

*Republic Molding Corp. v. B. W. Photo Utilities*,
    319 F.2d 347 (9th Cir. 1963) .............................................................................................36, 37

*Sears v. Mid Valley Enterprises*,
    LLC, No. 219CV00532APGDJA, 2020 WL 8872291 (D. Nev. Apr. 16, 2020)....................24

*Sensoria, LLC v. Kaweske*,
    581 F. Supp. 3d 1243 (D. Colo. 2022)...............................................................................29, 34

*Siva Enterprises v. Ott*,
    No. 2:18-CV-06881-CAS(GJSX), 2018 WL 6844714 (C.D. Cal. Nov. 5,
    2018) ........................................................................................................................................33

*State Bank of India v. N.L.R.B.*,
    808 F.2d 526 (7th Cir. 1986), *cert. denied,* 483 U.S. 1005 (1987)..........................................7

*State v. Borowski*,
    231 Or. App. 511, 220 P.3d 100 (2009)..................................................................................41

*Tarr v. USF Reddaway, Inc.*,
    No. 3:15-CV-02243-PK, 2018 WL 659859 (D. Or. Feb. 1, 2018)....................................33, 34

*The John W. Carson Found. v. Toilets.com, Inc.*,
    94 U.S.P.Q.2d 1942 (T.T.A.B. Mar. 25, 2010).......................................................................13

*United States v. Brown*,
    555 F. App'x 838 (10th Cir. 2014) .........................................................................................24

*United States v. Cannabis Cultivators Club*,
    5 F. Supp. 2d 1086 (N.D. Cal. 1998) ......................................................................................18

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

*United States v. Darby,*
  312 U.S. 100, 115, 61 S. Ct. 451, 85 L. Ed. 609 (1941)..........................................23

*United States v. Kras,*
  409 U.S. 434 (1973)..........................................................................................14

*United States v. McIntosh,*
  833 F.3d 1163 (9th Cir. 2016) ..........................................................................31

*United States v. Rosenwasser,*
  323 U.S. 362 (1945)....................................................................................15, 16

*United States v. Sullivan,*
  274 U.S. 259, 47 S. Ct. 607, 71 L. Ed. 1037 (1927)..........................................22

*United States v. Vonn,*
  535 U.S. 55, 122 S. Ct. 1043, 152 L. Ed. 2d 90 (2002)......................................11

*William H. Elliott & Sons Co.,*
  78 N.L.R.B 1078 (1948) ...............................................................................6, 15

**Statutes**

11 U.S.C. § 1325(a)(3)...............................................................................................14

15 U.S.C. § 1051 .....................................................................................................13

15 U.S.C. § 1127 .....................................................................................................13

18 U.S.C. § 2 ...........................................................................................................37

21 U.S.C § 801.........................................................................................................12

21 U.S.C. § 802 .......................................................................................................31

21 U.S.C. § 812(c)(c)(10) .........................................................................................31

21 U.S.C. § 829(b) ...................................................................................................27

21 U.S.C. § 829(e) ...................................................................................................27

21 U.S.C. § 841(a)(1) ...............................................................................................31

21 U.S.C. § 846...................................................................................................32, 37

26 U.S.C. § 280E .....................................................................................................22

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

28 U.S.C. § 153(d) ................................................................................................... 7

28 U.S.C. § 801 ..................................................................................................... 16

29 U.S.C. § 151 ....................................................................................................... 5

29 U.S.C. § 152 ..................................................................................................... 15

29 U.S.C. § 152(1)-(14) ........................................................................................ 13

29 U.S.C. § 152(2) ................................................................................................. 7

29 U.S.C. § 152(3) ............................................................................................ 6, 15

29 U.S.C. § 152(6) ................................................................................................. 6

29 U.S.C. § 152(7) ................................................................................................. 6

29 U.S.C. § 156 ....................................................................................................... 7

29 U.S.C. § 157 ....................................................................................................... 6

29 U.S.C. § 158 ....................................................................................................... 6

29 U.S.C. § 160 ..................................................................................................... 16

29 U.S.C. § 164(c) .................................................................................................. 9

29 U.S.C. § 172(c) .................................................................................................. 7

29 U.S.C. § 203(d) ................................................................................................ 15

29 U.S.C. § 203(e)(1) ........................................................................................... 15

29 U.S.C. § 402 ..................................................................................................... 20

29 U.S.C. § 402(c) ................................................................................................ 20

29 U.S.C. § 402(i) ................................................................................................. 20

29 U.S.C. § 802(16) .............................................................................................. 26

42 U.S.C. § 121114(a) .......................................................................................... 13

Americans with Disabilities Act (ADA) ......................................................... 3, 13, 14

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

Agriculture Improvement Act of 2018 .................................................................26

Cal Bus. Prof. Code § 26001(ac) ......................................................................35

Cal. Bus. Prof. Code § 26051.5(5)(a)(i)-(5)(e)(iii) ...........................................35

Consolidated Appropriations Act of 2024 ..........................................................25

Controlled Substances Act (CSA) ............................................................. *passim*

Defense of Marriage Act (DOMA) .....................................................................32

Farm Bill ........................................................................................................1, 26

Federal Power Act ..............................................................................................22

Federal Labor Standards Act (FLSA) .........................................6, 15, 16, 23, 24

National Labor Relations Act (NLRA) ..................................................... *passim*

ORS 174.040 ......................................................................................................39

ORS 174.040(1)-(3) ...........................................................................................39

ORS 181A.195 ...................................................................................................19

ORS 475C.009(2) .................................................................................................2

ORS 475C.273(3) ...............................................................................................19

ORS 475C.833(4)(a) ..........................................................................................19

ORS 571.336 ........................................................................................................8

Railway Act ........................................................................................................11

Social Security Act .............................................................................................23

49 Stat. 450 c. 372 § 2 ....................................................................................5, 11

61 Stat. 137 c. 120, title I, § 101 .......................................................................11

Taft-Hartley Act of 1947 ....................................................................................11

Trademark Act ....................................................................................................13

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

Trafficking Victims Protection Reauthorization Act .......................................................24

**Other Authorities**

37 C.F.R § 2.114(b)(2)...................................................................................................35

87 Fed. Reg. 61 ............................................................................................................27

89 Fed. Reg. 44597 .......................................................................................................27

27A Am. Jur. 2d Equity § 21 ........................................................................................36

First Amendment ......................................................................................................4, 32

Fifth Amendment .....................................................................................................32, 33

Fourteenth Amendment .............................................................................................32, 42

Fed. R. Civ. P. 12 .........................................................................................................36

Fed. R. Civ. P. 12(b)(6)..................................................................................................35

Grand View Research, GVR-4-68040-235-9, U.S Industrial Hemp Market Size,
    Share & Trends Analysis Report by Application (2023)............................................8

https://www.ams.usda.gov/rules-regulations/hemp/state-and-tribal-plan-review
    (last visited March 28, 2025) ................................................................................26

https://www.ams.usda.gov/rules-regulations/hemp/state-and-tribal-plan-review
    (last visited March 29, 2025) ..................................................................................8

*https://www.census.gov/quickfacts/fact/table/malheurcountyoregon/PST045224*
    *(*last visited March 25, 2025) ...............................................................................19

https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/jurisdictional-
    standards (last visited Mach 26, 2025) ..................................................................7

https://www.nlrb.gov/about-nlrb/who-we-are (last visited March 26, 2025)..................6

https://www.oregon.gov/olcc/marijuana/pages/marijuana-market-data.aspx (last
    visited March 25, 2025) ........................................................................................19

https://www.pdxascend.com/shop/ (last visited March 27, 2025)................................26

https://www.ufcw.org/who-we-represent/cannabis/ (last visited March 25, 2025).........9

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-
    cannabis-
    derivedproductsincludingcannabidiolcbd#:~:text=FDA%2Dregulated%20prod
    ucts?,A.,products%20containing%20any%20other%20substance (last visited
    March 25, 2025) ........................................................................................................26

National Conference of State Legislatures Regulated Cannabis Programs Map
    Below. https://www.ncsl.org/civil-and-criminal-justice/cannabis-overview
    (last visited March 28, 2025) ...................................................................................18

OAR 603-048-0010, *et seq* ..........................................................................................26

OAR 603-048-0150 ..........................................................................................................8

OAR 603-048-0175 ..........................................................................................................8

OAR 603-048-0200 ........................................................................................................17

OAR 603-048-0225 ........................................................................................................17

OAR 603-048-0300 ........................................................................................................17

OAR 603-048-0315 ........................................................................................................17

OAR 603-048-0640 ........................................................................................................17

OAR 603-048-1100 ..........................................................................................................8

OAR 603-048-1500(2)(b) .......................................................................................17, 28

OAR 603-048-1500(3)(b) .......................................................................................17, 28

OAR 845-025-8760 ........................................................................................................19

United States Constitution .....................................................................................37, 42

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

## I.    SUPPLEMENTAL BRIEF IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

### A.    Introduction.

On February 26, 2025, the Court heard oral arguments related to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction. During arguments, the Court noted it would take supplemental briefing before the preliminary injunction hearing on April 29, 2025. The Court provided instructive remarks on where further research would be useful, including whether the National Labor Relations Act (NLRA) applies to businesses that are legal under state law but illegal under federal law. However, at the onset, the Court needs to understand that while half of Plaintiffs' businesses relate to marijuana processing and sales and may be viewed as illegal due to the Controlled Substances Act (CSA), the other half relates to hemp processing and sales, which is legal under federal law. In 2018, the Farm Bill removed hemp from the definition of marijuana under the CSA and directed the United States Department of Agriculture to create a national regulatory framework for hemp production in the United States. Plaintiff Ascend regularly sells hemp along with marijuana, while Plaintiff Bubble's Hash is a hemp and marijuana processor.

Thus, it is not accurate that Plaintiffs are involved in an entirely illegal business under federal law. If anything, Plaintiffs are a quasi-legal business. To the best of Plaintiffs' knowledge, no court in the country has considered the implications of federal law on a business engaged in a federally legal hemp operation alongside its federally illegal marijuana operation. Does that then require federal law to apply only half of the time? Unlikely, as that would prove unworkable. Nor is it the standard under the NLRA and Commerce Clause that has given the National Labor Relations Board's (NLRB) its jurisdiction over covered employers. The NLRB has appropriately

PAGE 1 -    PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

assumed jurisdiction over the cannabis[1] industry as a whole pursuant to the power and authority of the NLRA and Congress' Commerce Clause power. The NLRB determined that the industry, in the aggregate, would have a significant impact on interstate commerce if left unchecked. Given that 48 states now have some form of legalized marijuana (medical, recreational, or both), and all states are involved in hemp, it is an appropriate jurisdiction for the NLRB to authorize as cannabis employers are engaged in and affect interstate commerce.

As set forth in the summary below and in Plaintiffs' detailed arguments, the Court should ignore any argument that the NLRA does not apply to cannabis employers because it is involved in federally illegal activity.

**B.    Summary of Memorandum of Law Arguments.**

As set forth under the Memorandum of Law, there is substantial support that cannabis employers are not excluded from the NLRA and in reality, have been actively pursued by the NLRB since 2013. Specifically, the definition of "employer" under the NLRA is broad where the NLRA failed to exclude any employer engaged in unlawful activity. The definition of "commerce" is also broad, and precedent establishes Congress's intent to include commerce that is part of unlawful activity. There is also support that despite what may be perceived as an illegal marijuana market, interstate commerce is still impacted by the numerous states that have enacted the legalization of marijuana and who are engaged in the production and sale of hemp across the nation. Furthermore, the OLCC regulations and Measure 119 indicate that interstate commerce is

---

[1] "Adult use cannabis item" as defined under Oregon law is "a marijuana item," or it is "industrial hemp or product that exceeds" the concentration if adult use cannabinoids established by the OLCC or the greater of a concentration of more than .3% total delta-9-tetrahydrocannabinol or what is allowed under federal law. ORS 475C.009(2). When referring to cannabis within this Supplemental Brief it refers to both marijuana and industrial hemp unless separately stated.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

impacted, for which the NLRB has rightly concluded that these state cannabis programs are involved in interstate commerce. If left to their own labor relations, the NLRB confirmed cannabis employers would have the ability to harm interstate commerce, given the fast-growing acceptance of marijuana and hemp around the country.

Moreover, numerous federal laws in addition to the NLRA, like the Fair Labor Standards Act (FLSA),the Americans with Disabilities Act (ADA), tax and bankruptcy law, as well as the federal courts have held cannabis employers to the same standards and have refused to treat them differently due to the illegality of the underlying business. So long as the relief sought does not use the federal courts to perpetuate the illegal activity, the courts are well within their jurisdiction to proceed. As the Court will see, this is not a case where the illegality and unclean hands doctrine bar this matter. At no point do Plaintiffs seek the Court's assistance to perpetuate actions that would violate the CSA. There is simply no causal connection between the relief and illegal activity, which is required under those doctrines. Rather, Plaintiffs seek to enforce their constitutional rights and their employees to enjoin Measure 119 which deals with labor contracts. These points are addressed in further detail in the Memorandum of Law.

Finding that the NLRA includes cannabis employers who are engaged in interstate commerce and that the illegality of the business activity is not relevant to the relief sought here, the Court will likely find that Plaintiffs will succeed on the merits of at least one if not all its challenges. Plaintiffs refer the Court back to its arguments in its Motion for Temporary Restraining Order and Preliminary Injunction and Reply. For quick reference, the NLRA preempts Measure 119, as it takes away the rights of employees to choose their labor organization (or not) and mandates employers to bargain with a labor organization in an area that has been intentionally

PAGE 3 -   PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

left ungoverned by the NLRA. Measure 119 also interferes with what the NLRA allows an employer to say regarding unionization, which is also a First Amendment violation.

Furthermore, Measure 119 is void for vagueness as cannabis employers are left guessing as to what they must do to comply. A point for which has already played out before this Court in the arbitrary, inconsistent, and everchanging enforcement of Measure 119 by the OLCC. Measure 119 on its face violates equal protection. Measure 119 has also begun to infringe upon Plaintiffs' right to contract, as it relates to the preexisting employment and vendor contracts. Vendor contracts rely on the status of a license to provide services. Those vendors have objected to the OLCC's interpretation of Measure 119 and that the license is active, therefore threatening to withdraw services. Additionally, Plaintiffs have promised their employees they will comply with the NLRA as part of the employment contract. Measure 119 is in direct violation of the NLRA, thus causing Plaintiffs to violate their preexisting employment contracts.

Because it is likely Plaintiffs will succeed on the merits, the Court must then determine whether the remaining sections are severable from the unconstitutional sections of Measure 119. The Court will likely find that they are not. Once the unconstitutional sections are removed, nothing remains to enforce as those sections cannot stand on their own and are therefore incomplete without. Plaintiffs are therefore requesting the Court enjoin Measure 119 in its entirety.

This Supplemental Brief is supported by the pleadings to date, the Supplemental Declaration of Stephen M. Scott ("Scott Suppl. Decl."), and the following Memorandum of Law.

PAGE 4 -    PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

## II.    MEMORANDUM OF LAW

**A.    The NLRA Applies to Cannabis Employers as Already Determined by the NLRB.**

Since 2013, when marijuana and industrial hemp were both federally illegal, the NLRB assumed jurisdiction over cannabis employers pursuant to the NLRA and Congress's Commerce Clause power. As discussed below. the NLRB's jurisdiction is broad encompassing any employer engaged in interstate commerce or those that have the ability to affect interstate commerce if not governed.

**1.    The NLRB's jurisdiction is broad, encompassing any employer engaged in interstate commerce.**

The NLRA was passed in July 1935 through Congress's Commerce Clause, Article 1, Section 8, Clause 3 power with the intent to "diminish the causes of labor disputes burdening or obstructing interstate and foreign commerce[.]." July 5, 1935, c. 372 §2, 49 Stat. 450; 29 U.S.C. § 151. From its inception, the NLRA was concerned with strikes and industrial unrest that burdened or obstructed commerce by:

(1)    Impairing the efficiency, safety, or operation of the instrumentalities of commerce;

(2)    Occurring in the current of commerce;

(3)    Materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods from or into the channels of commerce, or the prices of such materials or goods in commerce; or

(4)    Causing diminution of employment and wages in such volume as substantially to impair or disrupt the market for goods flowing from or into the channels of commerce.

PAGE 5 -   PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

*Id.*

Whereas "commerce" was defined as it is today to encompass "trade, traffic, commerce transportation, or communication among several states[.]" 29 U.S.C. § 152(6). And "affecting commerce" was defined, as it is today, to mean "in commerce, or burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." 29 U.S.C. § 152(7). Much of the NLRA's adoption was rooted in the idea that by allowing employees to organize and bargain "safeguards commerce from injury, impairment, or interruption" from those corporate employers who suppress wage rates, purchasing power, and working conditions. *Id.*

The NLRA is a substantial piece of legislation that protects private-sector employees from unlawful employment practices regardless of the employer. https://www.nlrb.gov/about-nlrb/who-we-are (last visited March 26, 2025); 29 U.S.C. § 157. It also protects private-sector employees from unfair labor practices employers and unions may commit. *Id;* 29 U.S.C. § 158. "Employee" is broadly defined under the NLRA and is not limited "to the employees of a particular employer." 29 U.S.C. § 152(3). Yet "employee" does not mean an "agricultural laborer," independent contractor, supervisor, those who are not employees of a covered employer, etc. *Id.* In determining whether an "agricultural laborer" is an "employee," the NLRB borrows from other federal laws to broaden the definition of "agricultural" under the Federal Labor Standards Act (FLSA). *See, e.g., William H. Elliott & Sons Co.,* 78 N.L.R.B 1078, 1078-1080 (1948); *Hershey Estates,* 112 N.L.R.B., 1300, 1301 (1955). By promoting collective bargaining and encouraging peaceful resolution of labor disputes, the NLRA also protects employers from industrial strife. The NLRB

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

and its general counsel are responsible for carrying out the NLRA pursuant to its authority. 28 U.S.C. § 153(d); 29 U.S.C. § 156; 29 U.S.C. § 172(c).

Congress's Commerce Clause authority to enact the NLRA was first challenged in 1937 in *N.L.R.B. v. Jones & Laughlin Steel Corp,* 301 U.S. 1. The United States Supreme Court determined the NLRA constitutional as it was not an attempt to regulate all industrial labor relations within the nation. Looking at the precise definitions of "commerce" and "affecting commerce," the *Jones* court did not find the NLRA to include all employers and employees within all industries, only those that burdened or obstructed commerce. *N.L.R.B. v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 31, 57 S. Ct. 615, 621, 81 L. Ed. 893 (1937). The *Jones* court also noted that whether a "particular action does affect commerce in such a close and intimate fashion as to be subject to federal control, and hence to lie within the authority conferred upon the Board, is left by the statute to be determined[.]" *Jones & Laughlin Steel Corp.,* 301 U.S. at 32. And subsequent matters have solidified that the NLRB's jurisdiction is broad encompassing "any" private-sector employer engaged in interstate commerce that exceeds minimum sales criteria. *N.L.R.B. v. Reliance Fuel Oil Corp.,* 371 U.S. 224, 226 (1963); *State Bank of India v. N.L.R.B.*, 808 F.2d 526, 531 (7th Cir. 1986) (The NLRA applies to "any" employer doing business in this country), *cert. denied,* 483 U.S. 1005 (1987); 29 U.S.C. § 152(2) ("employer" "includes any person acting as an agent of an employer, directly or indirectly[.]"); https://www.nlrb.gov/about-nlrb/rights-we-protect/the-law/jurisdictional-standards (last visited Mach 26, 2025).

Furthermore, the NLRB is not simply limited to the activities that a single employer is involved in, but rather, whether a category of employers throughout the country, if left unfettered, would harm commerce. *Id.* With 38 states having adopted some form of legalized medical

PAGE 7 -   PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

marijuana and another 24 states legalizing recreational marijuana, it is fitting that the NLRB has determined that the cannabis industry are covered employers for purposes of compliance with the NLRA. Joanna Lampe, Cong. Rsch. Serv., IF12270, The Federal State of Marijuana and the Policy Gap with States (2024) (for the support of legalized medical marijuana and recreational marijuana across the country). Likewise, those same employers are involved in the federally legal production and sale of hemp, where 39 states have submitted plans approved by the United States Department of Agriculture (USDA) to produce and sell hemp as part of a national legal market. https://www.ams.usda.gov/rules-regulations/hemp/state-and-tribal-plan-review (last visited March 29, 2025); OAR 603-048-0150; OAR 603-048-1100; ORS 571.336. The remaining 11 states have a USDA hemp producer license. *Id.* Specifically, in Oregon, cannabis employers that sell industrial hemp are not required to obtain a vendor site license for the sale of federally legal industrial hemp (regulated by the Oregon Department of Agriculture) due to their production, processor, wholesaler, or retailer marijuana licenses (regulated by the OLCC). OAR 603-048-0175. Given the extent of a cannabis employers' impact on commerce, whether as part of an intertwined intrastate and interstate scheme, there is no question as to why or how the NLRB assumed jurisdiction over such employers as it did in 2013.

Further, the NLRA also instills in the NLRB the consideration of those activities that may appear purely local but for which the "interlacings of business across state lines adversely affect such commerce." *Id.* This undoubtedly would include industrial hemp production and sales in a national market generating $291 million in 2023. Agricultural Statistics Board, USDA, National Hemp Re (2024). Or the sale of industrial hemp, an even larger national market generating $1.63 billion in sales in 2023. Grand View Research, GVR-4-68040-235-9, U.S Industrial Hemp

PAGE 8 -    PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

Market Size, Share & Trends Analysis Report by Application (2023). For which Plaintiffs contribute to. Brett Decl. ¶ 3; Haley Decl. ¶ 3.

As a class of employers, it is apparent that Plaintiffs are engaged in interstate commerce whether through legal and federally illegal business activity.

### 2. The NLRB assumes jurisdiction over cannabis employers who meet certain gross annual sales and who do not solely employ agricultural workers.

In 2013, the NLRB concluded it had jurisdiction over enterprises that were engaged in the medical marijuana industry "even where production and consumption is intended to be wholly intrastate." Scott Reply Decl. ¶ 2, Ex. 10, at 8 (NLRB Advice Memo Wellness Connection of Maine). The NLRB "generally does not decline jurisdiction where a state or foreign entity exerts significant control," especially when the effect of the labor dispute on commerce is substantial. *Id.;* 29 U.S.C. § 164(c). When the NLRB chooses to exercise its jurisdiction over a matter, it "is not a question for the courts . . . in the absence of extraordinary circumstances, such as unjust discrimination," and substantial prejudice, neither of which are present here. *N.L.R.B. v. Anthony Co.*, 557 F.2d 692, 695 (9th Cir. 1977).

Rooted in this jurisdictional decision was the fact that in 2013, the United Food and Commercial Workers Union (UFCW) had created a cannabis division, representing workers in six states. *Id.* This furthers the idea that even local cannabis markets affect interstate commerce through the national bargaining representation and power the employees may receive. The UFCW cannabis division exists today and has grown, representing employees in 290 dispensaries and 36 grow facilities around the country in a "global legal marijuana market" projected to hit $145.5 billion by this year. https://www.ufcw.org/who-we-represent/cannabis/ (last visited March 25, 2025). In 2013, the NLRB also found that Maine's regulatory requirements of

PAGE 9 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

background checks, employee assistance programs, and the purchase of out-of-state supplies to run a cannabis business were indicative of an enterprise engaged in interstate commerce. Scott Reply Decl. ¶ 2, Ex. 10 (Advice Memo Wellness Connection of Maine). Most importantly, the medical marijuana industry was "large, growing, and not confined to state borders," where a labor dispute in the industry could "adversely affect out-of-state suppliers or interstate channels of interstate commerce." *Id.* This still rings true today, as there are now 38 states that have passed laws allowing medical marijuana. Joanna Lampe, Cong. Rsch. Serv., IF12270, The Federal State of Marijuana and the Policy Gap with States (2024) (for the support that 38 states have legalized medical marijuana while 24 states have legalized recreational marijuana).

If anything, the need for federal labor intervention due to the implications of interstate commerce is more prevalent than in 2013. Therefore, NLRB has extended its jurisdiction to include recreational cannabis retailers, including those in Oregon. *See* Oregon Cannabis Co., Case No. 19-CV-294944; CBN Holdings, Inc., Case No. 19-CA-302647; Eagle 5 Enterprises Inc., Case No. 19-CA-306865.

**B.      Plaintiffs Are Employers Engaged in Interstate Commerce Despite Marijuana's Classification Under the Controlled Substances Act as a Schedule I Substance.**

Despite the obvious implications of interstate commerce and the proper jurisdiction of the NLRB, State Defendants loosely try to fashion a question that disregards established principles: whether the Constitution protects the commerce and employers at issue, i.e., cannabis employers that are confined to the borders of this state due to the illegality (although this is not entirely accurate) of the product they sell under the CSA. Defs.' Resp. at 13-15. That reframing gets State Defendants nowhere.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

1.    **Plaintiffs[2] are employers as defined by the NLRA.**

Plaintiffs are unaware of Congress excluding cannabis employers from the NLRA. Instead, the class of those excluded from the NLRA's definition of "employer" was expressly stated in 1935. July 5, 1935, c. 372 §2, 49 Stat. 450 (the NLRA does not consider an employer to be the United States, any state or political subdivision, those subject to the Railway Act, or any labor organization when acting not as an employer). An amendment was made through the Taft-Hartley Act of 1947 to exclude "wholly owned Government Corporation" from the definition of "employer." June 30, 1947, c. 120, title I, § 101, 61 Stat. 137. However, no other amendments to the definition of "employer" have occurred since then. Had Congress intended for the NLRA to exclude cannabis employers or even those engaged in illegal business activities or operations, it would have incorporated language to that effect. *United States v. Vonn*, 535 U.S. 55, 65, 122 S. Ct. 1043, 1049, 152 L. Ed. 2d 90 (2002) (cannon of *expressio unius est exclusio alterius*, where "expressing one item of a commonly associated group or series excludes another left unmentioned"). Such congressional silence on the applicability of the NLRA to cannabis employers is an indication of Congress's intent not to categorically exclude these employers. *See Hale v. State of Ariz.*, 993 F.2d 1387, 1392, n.8 (9th Cir. 1993).

Furthermore, the NLRB has narrowly construed the employer exemption statute, where as long as the NLRB's determination is reasonable it will not be disturbed. *Museum Assocs. v. N.L.R.B.,* 688 F.2d 1278, 1280 (9th Cir. 1982). As indicated above, the NLRB is concerned with the impact a labor dispute would have on commerce due to the growth and interstate implications

---

[2] Plaintiff Casala meets the definition of "employer" under the NLRA but currently does not meet the annual revenue requirement for the NLRB to assume jurisdiction. However, this is an everchanging requirement depending on the revenue of the business.

PAGE 11 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

of marijuana and hemp. The NLRB has more than a reasonable basis to include the cannabis industry. Further, the NLRA is a statute of general application. *N.L.R.B. v. Chapa De Indian Health Program, Inc.,* 316 F.3d 995, 998 (9th Cir. 2003). Given the NLRA has not created an exclusion for cannabis employers and the NLRA is otherwise silent on the issue, there is a strong support that the NLRB's construction of the NLRA as reaching cannabis employers engaged in interstate commerce. *See, e.g., Pauma v. Nat'l Lab. Rels. Bd.,* 888 F.3d 1066, 1077 (9th Cir. 2018) (the NLRB had jurisdiction over tribal employees as they were not expressly excluded employers). Likewise, Oregon's Legislative Counsel also agreed that due to the broad definitions of "employee" and "employer" under the NLRA, the NLRB was likely to bring cannabis employers and employees under its protections. Scott Decl. ¶ 12, Ex. 5, at 3-4.

Similarly, Congress enacted the CSA in 1970. Yet, nothing in the CSA precludes the NLRA from protecting employees in the cannabis industry from bringing claims under the NLRA against non-complying cannabis employers, or indicates Congress's intent for the CSA to supersede the NLRA. *See* 21 U.S.C §§ 801, *et seq*. This is true even though Congress drafted the CSA with knowledge of the NLRA and has amended it seven times since its inception. *See id.* If Congress wanted to bar cannabis employers from the NLRA's coverage, it has had ample opportunity under both the CSA and the NLRA. But Congress hasn't. This clearly indicates that Congress's failure to exclude these employers was not inadvertent. *See, e.g., Pauma v. Nat'l Lab. Rels. Bd.*, 888 F.3d 1066, 1074 (9th Cir. 2018) (the exemptions cannot be read to exempt an unmentioned employer). This is especially true since marijuana was legal (though heavily taxed) until 1970 and the NLRA unquestionably covered any such established employers during that time. *See Gonzales v. Raich*, 545 U.S. 1, 11 (2005) (noting marijuana was legal until 1970).

PAGE 12 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

### 2. The NLRA has never limited its jurisdiction to lawful activity like other federal laws have done.

Perhaps more telling that the NLRA applies to cannabis employers is the fact that the NLRA has never expressly limited its jurisdiction to "lawful commerce," or "legal substance" as other federal laws have. The Trademark Act expressly requires all applicants to have a "bona fide" intent to use the mark in commerce. *See* 15 U.S.C. §§ 1051, 1127. The Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The "bona fide" requirement limits granting a mark to lawful business (not to commerce itself). *The John W. Carson Found. v. Toilets.com, Inc.*, 94 U.S.P.Q.2d 1942 (T.T.A.B. Mar. 25, 2010) ("[i]t has been the consistent position . . . that a bona fide use of a mark in commerce means a 'lawful use in commerce.'"). Thus, if the mark itself or the goods or services on which a mark is to be used are illegal under federal law, there can be no "bona fide" intent for use in lawful commerce. *See, e.g., In re JJ206, LLC*, 120 U.S.P.Q. 2d 1568 (T.T.A.B. Oct. 27, 2016) (declining to issue a trademark for devices used to smoke marijuana); *In Re Morgan Brown*, 119 U.S.P.Q.2d 1350 (T.T.A.B. Jul. 14, 2016) (declining to issue trademark for use in connection with marijuana sales). In contrast, the NLRA does not limit its reach over employers, employees, or commerce to "lawful" businesses or commerce. 29 U.S.C. § 152(1)-(14).

Much the same, the ADA expressly prohibits individuals using federally illegal drugs (like marijuana) from claiming a disability based on such drug use. *See* 42 U.S.C. § 121114(a). Because of the express wording of the ADA, courts have found employers are not liable for employment discrimination for claims alleging marijuana use constitutes a disability. *See, e.g., James v. City of Costa Mesa*, 700 F.3d 394, 397 (9th Cir. 2012) (finding the "ADA does not protect medical marijuana users who claim to face discrimination on the basis of their marijuana use."); *Emerald*

PAGE 13 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

*Steel Fabricators, Inc. v. BOLI*, 230 P.3d 518, 524-25 (Or. 2010) (employer did not discriminate against employee for medical marijuana use under state law because the ADA preempted the state statute authorizing the same); *Cf. EEO v. Nature's Herb and Wellness Center, dba High Plainz Strain,* United States District Court, for the District of Colorado, 1:24-cv-02706 (cannabis employer discriminated against the employee based on ADA disability unrelated to marijuana use and agreed to pay settlement).

Continuing the trend, the Bankruptcy Code also expressly requires plans be "made in good faith and by means not forbidden by law." *See* 11 U.S.C. § 1325(a)(3). "There is no constitutional right to obtain a discharge of one's debts in bankruptcy." *United States v. Kras,* 409 U.S. 434, 446 (1973). Bankruptcy is a privilege. *In re Arenas*, 535 B.R. 845, 853 (B.A.P. 10th Cir. 2015). Because the Bankruptcy Code prohibits plans from violating federal law, courts deny petitions containing plans violating federal law. *See, e.g., id.* at 852 (finding debtor's plan was not feasible because it required an innocent third-party trustee to violate the CSA by selling property associated with marijuana production without adopting a per se rule that debtors engaged in the marijuana business are ineligible for bankruptcy relief); *In re Rent-Rite Super Kegs West, Ltd*., 484 B.R. 799, 809 (Bankr. D. Colo. 2012) (dismissing petition of landlord leasing space for marijuana growth to tenants without required DEA approval because the Bankruptcy Code "forecloses any possibility of [him] obtaining confirmation of a plan that relies in any part on income derived from criminal activity."). However, as a comparison when the bankruptcy court is not asked to violate federal law, they will apply Bankruptcy Code to matters involving cannabis. *In re Hacienda Co*., *LLC*, 647 B.R. 748, 754 (Bankr. C.D. Cal. 2023).

PAGE 14 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

Rather, the NLRA is comparable to that of the FLSA, which courts have consistently applied the FLSA to employers who are operating under federally illegal activity. *See, e.g., Donovan v. Burgett Greenhouses, Inc.*, 759 F.2d 1483, 1485 (10th Cir. 1985) (finding FLSA violations where an employer employed illegal aliens in violation of federal immigration laws); *Lucas v. Jerusalem Café, LLC,* 721 F.3d 927, 933 (8th Cir. 2013) (finding undocumented workers "employees" within the meaning of the FLSA and stating "there is no reason why the fact that the employers unlawfully hired the workers should exempt them from paying the wages that if lawful they would have to pay."); *Patel v. Quality Inn S.*, 846 F.2d 700, 706 (11th Cir. 1988) (same); *Bustamente v. Uno Café & Billiards, Inc*., No. 1:15-cv-04192-FB-RML, 2018 WL 2349507, at *4 (E.D.N.Y. May 23, 2018) (finding the FLSA covered an employee working as a security guard and slot machine manager for an illegal gambling operation). This Court should find the treatment of an employer under the FLSA as persuasive to hold that the NLRA applies to cannabis employer. This is especially so when we know the NLRA borrows from the definitions of the FLSA. *See, e.g., William H. Elliott & Sons Co.,* 78 N.L.R.B 1078, 1078-1080 (1948); *Hershey Estates*, 112 N.L.R.B., 1300, 1301 (1955

Much like the NLRA, the FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]" 29 U.S.C. § 203(d); *Cf.* 29 U.S.C. § 152 (The NLRA defines "employer" as "any person acting as an agent of an employer, directly or indirectly[.]") The FLSA further defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *Cf.* 29 U.S.C. § 152(3) (an "employee" is not limited to any particular employer). Like the NLRA, the FLSA definitions are afforded the broadest sense ever "included in any one [Congressional] act." *United States v. Rosenwasser*, 323 U.S. 362, 363

PAGE 15 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

(1945). Because of the remedial purpose of the FLSA, workers are presumed covered unless specifically exempted. *Powell v. United States Cartridge Co*., 339 U.S. 497, 516-17 (1950) ("Such specificity in stating exemptions strengthens the implication that employees not [specifically] thus exempted . . . remain within the Act."); *United States v. Rosenwasser*, 323 U.S. 362, 362-63 (1945). This is similar to the NLRA's broad jurisdiction granted to the NLRB to determine the employers and employees subject to its control. 29 U.S.C. § 160 ("the Board is empowered . . . to prevent any person from engaging in any unfair labor practice . . . affecting commerce."

Rather, it would be an encroachment upon legislative prerogative for a court to hold that a class of unlisted employers is excluded from the NLRA when the Act itself does not expressly limit the coverage and when the NLRB has not reached that same conclusion.

### 3. Oregon's cannabis industry is engaged in interstate commerce.

Finding that cannabis employers are not excluded from the NLRA, the Court must then determine whether interstate commerce is implicated. The Supreme Court has made absolutely clear that "all objects of interstate trade merit Commerce Clause protection." *City of Philadelphia v. New Jersey*, 437 U.S. 617, 622 (1978). This includes cannabis made legal under state laws, which likely affects interstate commerce. *Finch v. Treto*, 606 F. Supp. 3d 811, 833 (N.D. Ill. 2022), *aff'd in part, dismissed in part,* 82 F.4th 572 (7th Cir. 2023) (the court rejected the department's argument that cannabis is not interstate commerce because the CSA makes it federally illegal). In fact, Congress has made detailed findings that controlled substances, like marijuana, "are transported in interstate commerce," where intrastate and interstate-controlled substances "cannot be differentiated." 28 U.S.C. § 801. The idea that Oregon's marijuana market is purely local or that there is no interstate market here because it is illegal at the federal level, is simply wrong. It

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

also fails to consider the federally legal aspect of industrial hemp and its coexistence with marijuana in the State of Oregon as well as many other states. And even if Oregon had designed its marijuana market to be purely local, the market would still be "part of an economic class of activities that have a substantial effect on interstate commerce" and thus subject to the requirements of the Commerce Clause. *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (regulation of the cultivation of medical marijuana for personal consumption is within Congress's Commerce Clause powers). *See also Hughes v. Oklahoma*, 441 U.S. 322, 326 n.2 (1979) ("the definition of commerce is the same when relied on to strike down or restrict state legislation as when relied on to support some exercise of federal control"). Oregon cannot legalize marijuana and then attempt to take away federal protections by claiming that it is running a purely local or intrastate market due to the CSA to bypass unfavorable results. This is especially not so when its industrial hemp market is clearly a part of interstate commerce. *See* OAR 603-048-1500(2)(b) (allows hemp commodities or products for human consumption in Oregon to be processed in a another state); OAR 603-048-1500(3)(b) (allows for an out-of-state laboratory to test the hemp that was processed out-of-state); OAR 603-048-0200 (requires entities to register with Oregon's Secretary of State for a grower license but does not limit the license to those that are domestic entities); OAR 603-048-0300 (same as above but as applied to a hemp producer license); OAR 603-048-0225 (same as applied to a hemp handler license); OAR 603-048-0315 (same as applied to a vendor site license); OAR 603-048-0640 (allows for the destruction or disposal of cannabis waste to occur pursuant to the laws of another state alluding to the import and/or export of hemp products to and from the State of Oregon).

PAGE 17 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

When a class of activities is within the reach of the Commerce Clause, as intrastate marijuana and hemp are, the Court has no power "to excise, as trivial, individual instances' of the class." *Perez v. United States*, 402 U.S. 146, 154, 91 S. Ct. 1357, 1361, 28 L. Ed. 2d 686 (1971). To do so is the equivalent of adding an element to every claim that implicates the Commerce Clause. Thus, a party is required each time to relitigate what has already been established as interstate commerce, which is substantially affected. *United States v. Cannabis Cultivators Club*, 5 F. Supp. 2d 1086, 1098 (N.D. Cal. 1998). This is not an accepted practice.

Even then, it is evident, Oregon's marijuana program is part of a national market that includes 48 states (and the District of Columbia, Guam, Puerto Rico, and the U.S. Virgin Islands) that have legalized some form of marijuana for recreational or medical use to date. *See* The National Conference of State Legislatures Regulated Cannabis Programs Map Below. https://www.ncsl.org/civil-and-criminal-justice/cannabis-overview (last visited March 28, 2025).



PAGE 18 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

Looking specifically at Oregon and its cannabis sales between October 2016 and February 2025, the cannabis industry brought in $7.332 billion. https://www.oregon.gov/olcc/marijuana/pages/marijuana-market-data.aspx (last visited March 25, 2025). Interestingly, the rural Eastern Oregon County of Malheur, which borders Idaho, where recreational and medical cannabis is illegal, was the third highest cannabis revenue-producing county in the state for February 2025. *Id*. Yet, it had a population of 32,315 residents in July 2024, which ranks 26/36 in Oregon counties based on population.

*https://www.census.gov/quickfacts/fact/table/malheurcountyoregon/PST045224* (last visited March 25, 2025). In light of this data, it is hard to argue that Oregon's marijuana industry is purely intrastate. Before a majority of the country accepted the legalization of marijuana, it was common for neighboring states (where marijuana was still illegal) to see an uptick in arrests and judicial resources incurred as a result of legalization by another state. This led to unsuccessful federal court challenges. *Nebraska v. Colorado*, 577 U.S. 1211, 136 S. Ct. 1034, 194 L. Ed. 2d 545 (2016). Thus, this facade that interstate commerce cannot exist due to the CSA is nonsensical when the practical effect of the legalization of marijuana and even hemp is reviewed. And it should not be ignored.

Furthermore, the OLCC regulations allude to the participation in interstate commerce. The OLCC requires national criminal record checks pursuant to ORS 181A.195 as related to medical, retailer, and laboratory marijuana applicants. ORS 475C.273(3); ORS 475C.833(4)(a). The OLCC also provides recommendations for Oregon licensees that are in good standing to other jurisdictions to secure licenses in other states, implying the existence and acceptance of an interstate marijuana market. OAR 845-025-8760. The actual situation is contrary to the claim that

PAGE 19 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54539036.2

the CSA leaves no room for states to legalize any aspect of marijuana cultivation, sale, possession, or usage without triggering a violation of the CSA, thus halting any interstate commerce. The gap between what Congress might theoretically do with respect to the marijuana markets and what is actually happening is too great to sustain the position.

> 4. **Measure 119 recognizes the cannabis industry is engaged in interstate commerce.**

Even Measure 119 acknowledges the cannabis industry is an "industry engaged in commerce," and thus the power to implement Measure 119 is rooted in the determination that it is engaged in commerce. Should this Court find differently, Measure 119 is unlikely to stand as then there would be no bona fide labor organization to sign labor peace agreements based on the express definitions of Measure 119.

Cannabis licensees are required to enter into labor peace agreements with a "bona fide labor organization." Looking to Measure 119 and the definition of "bona fide labor organization," it can only be a labor organization as defined by 29 U.S.C. § 402 and "that is recognized to be engaged in an industry affecting commerce[.]" Under 29 U.S.C. § 402(i), "labor organization" means a "labor organization *engaged in an industry affecting commerce*," whereas "industry affecting commerce" means "any activity, business, or industry *in commerce* or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes any activity or industry '*affecting commerce' within the meaning of the Labor Management Relations Act, 1947*." (Emphasis added.) 29 U.S.C. § 402(c).

By its express terms, Measure 119, at a minimum, requires the cannabis industry to be engaged in commerce within the meaning of NLRA for the bona fide labor organization to be involved. If the NLRA does not apply to the cannabis industry, based on a lack of federally legal

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

interstate market, then Measure 119 still fails as no labor union can enter into a peace agreement with a cannabis employer as they are not engaged in commerce or affect commerce. On the face of Measure 119, an industry involved in commerce is a prerequisite for Measure 119 to even apply. Scott Decl. ¶ 13, Ex. 6.

Thus, if the Court finds that the NLRA does not apply to the cannabis industry due to a lack of commerce, Plaintiffs respectfully request the Court still find Measure 119 unenforceable. State Defendants cannot win on the argument that due to the illegality of marijuana there is no interstate commerce market but then still enforce a ballot measure that expressly relies on the opposite being true.

**C.      Numerous Other Federal Laws Apply to the Cannabis Industry for Which the Federal Government Acts to Protect.**

If it is not enough for the Court that the NLRA applies to cannabis employers based on the NLRB's 2013 determination, the language of the NLRA, and the prevalent interstate activity occurring, then the Court should explore the treatment of cannabis employers under other federal laws. The Court should also review the federal government's protection of the industry; all of which are addressed below. The Court will find that there is no support to treat a cannabis employer differently because of its underlying federally illegal (and legal) activity.

**1.      Cannabis employers are not excused from other federal laws.**

Just because the federal government has declined to prosecute state marijuana laws that conflict with the CSA, does not then mean other constitutional limits on states' regulatory powers also take a back seat. The CSA does not grant power to the states to burden interstate commerce, which would normally be impermissible, simply because the CSA prohibits marijuana. *See e.g., New England Power Co. v. New Hampshire*, 455 U.S. 331, 341, 102 S. Ct. 1096, 1101, 71 L. Ed.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

2d 188 (1982) (the Federal Power Act, Section 201(b), allowed states to exercise authority over hydroelectric energy transmitted over state lines but not to the point of altering the limits of the power of a state-imposed statute at the expense of the Commerce Clause); *see NPG, LLC v. City of Portland, Maine,* No. 2:20-CV-00208-NT, 2020 WL 4741913, at \*10 (D. Me. Aug. 14, 2020) (the CSA is not "congressional consent" to allow states free reign to regulate marijuana at the expense and destruction of the Commerce Clause because Congress prohibits marijuana). It is quite contrary, as federal agencies and courts have had no problem with applying federal laws and regulations to cannabis employers.

Employers are not excused from complying with federal laws simply because their business practices constitute federally prohibited conduct. For example, the federal government regulates, oversees, and profits from state cannabis operations in many different ways, and federal courts have notoriously enforced federal laws upon those engaged in illicit activity, including requiring cannabis businesses to pay federal taxes. *Olive v. Comm'r*, 792 F.3d 1146, 1149 (9th Cir. 2015); 26 U.S.C. § 280E. Dating back to the days of Al Capone, we know that illegal activity has never justified non-compliance with federal revenue laws. *United States v. Sullivan*, 274 U.S. 259, 263, 47 S. Ct. 607, 607, 71 L. Ed. 1037 (1927) ("we see no reason . . . or any reason why the fact that a business is unlawful should exempt it from paying the taxes that if lawful it would have to pay"); *James v. United States*, 366 U.S. 213, 218, 81 S. Ct. 1052, 1055, 6 L. Ed. 2d 246 (1961) (the Income Tax Act was amended in 1916 to remove the word "lawful," which was an "obvious" intent by Congress to tax both legal and illegal income).

This also holds true across numerous other areas of law and regulations. The requirements of the Occupational Safety and Health Administration bind cannabis employers. *See* Trulieve

PAGE 22 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

Holyoke Holdings LLC, Inspection # 1572011.015 (Massachusetts); Oregon Original LLC, Inspection # 1803323.015 (Oregon). Banks may serve marijuana-related businesses if they meet the Treasury Department's reporting requirements. *See* BSA Expectations Regarding Marijuana-Related Businesses, FIN-2014-G001, Financial Crimes Enforcement Network, U.S. Treasury Department (Feb. 14, 2014). Illegal activity does not foreclose on the Social Security Act. *Kobey v. United States*, 208 F.2d 583, 597 (9th Cir. 1953).

Even this Court has required cannabis employers to comply with federal laws, including the FLSA, enacted under the Commerce Clause. *United States v. Darby,* 312 U.S. 100, 115, 61 S. Ct. 451, 457–58, 85 L. Ed. 609 (1941); *Greenwood v. Green Leaf Lab LLC,* No. 3:17-cv-00415-PK, 2017 WL 3391671 (D. Or. July 13, 2017), *report and recommendation adopted,* No. 3:17-CV-00415-PK, 2017 WL 3391647 (D. Or. Aug. 7, 2017). As previously briefed, *Greenwood* found any possible violations under the Controlled Substances Act "as not relevant" to whether the FLSA applied. *Greenwood*, No. 3:17–CV–00415–PK, 2017 WL 3391671, at *3. This was due to the persuasiveness of the 2013 NLRB Advice Memo Wellness Connection. Scott Reply Decl. ¶ 2, Ex. 10, at 8. The *Greenwood* court found that because the NLRB had jurisdiction over a labor dispute against a medical marijuana business, the CSA was also not relevant to whether the FLSA applied. *Greenwood*, 2017 WL 3391671, at *2. Both the Ninth and the Tenth Circuits agree that cannabis employers "are not excused from complying with federal laws because of their other federal violations." *Id*.; *Kenney v. Helix TCS, Inc.,* 939 F.3d 1106, 1110 (10th Cir. 2019). If cannabis employers are not excused from complying with federal laws, then indeed, they receive the same protections and defenses as all other employers do.

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

Moreover, courts have repeatedly found that the illegality of an employer's business when confined to state's borders is not an absolute bar to Congress's ability to use the Commerce Clause to enact and enforce laws on intrastate activity. Even a Nevada brothel was engaged in enterprise commerce for the FLSA to apply. *Sears v. Mid Valley Enterprises*, LLC, No. 219CV00532APGDJA, 2020 WL 8872291, at *4 (D. Nev. Apr. 16, 2020). Federal courts have allowed Nevada sex workers to bring actions for damages under the Trafficking Victims Protection Reauthorization Act for conduct that occurred while working for the Nevada brothels as a sex worker. *Doe v. Lombardo*, No. 3:24-CV-00065-MMD-CSD, 2024 WL 4536772 (D. Nev. Oct. 18, 2024). Unsurprisingly, federal courts have found individuals with medical marijuana cards must still comply with other laws or agreements expressly prohibiting drug use. *See United States v. Brown*, 555 F. App'x 838, 839 (10th Cir. 2014) (medical marijuana card not a defense to driving while impaired); *Reed v. Michaud*, 498 F. App'x 767, 768 (10th Cir. 2012) (upholding parole violation of a prisoner with a medical marijuana license because his parole agreement expressly prohibited drug use).

In the event the Court finds that cannabis employers are not covered by the NLRA due to the CSA eliminating any federally legal interstate market, then the implications would be far reaching eliminating any precedent that found contrary in an attempt to reach justice. It would also be inconsistent with the majority of courts that have found the status of marijuana does not impact federal laws beyond the CSA.

### 2.    The federal government protects the cannabis industry.

Starting in 2009, the Department of Justice (DOJ) has relaxed its enforcement of the CSA as it relates to marijuana. Recognizing a shift in states legalizing medical marijuana, the DOJ

PAGE 24 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

issued a Memorandum for United States Attorneys that it was not "an efficient use of limited federal resources" to prosecute those who use marijuana as a recommended health treatment plan. Scott Suppl. Decl. ¶ 2, Ex. 13. Then, the DOJ made clear, in a 2013 document known as the "Cole Memorandum," that the federal government has no interest in interfering with state marijuana programs. Scott Suppl. Decl. ¶ 3, Ex 14. While it is, of course, true that these executive branch policies are not acts of Congress, they are powerful evidence of the practical reality that there is commerce in marijuana across the nation that the federal government is on board with. Of significance and perhaps not wildly considered, the Cole Memorandum acknowledges the CSA was never "traditionally" tasked to enforce or prosecute matters outside the list of its enforcement priorities (preventing violence, distribution to minors, revenue to cartels, pretext for trafficking). The CSA relied on state narcotic laws to address those other matters. Thus, can it be stated that cannabis employers are violating the CSA when it is acknowledged that the CSA "historically" has never devoted its resources to such state matters in the first place? Scott Suppl. Decl. ¶ 3, Ex 14. It appears unlikely because since the Cole Memorandum, other attorney generals have continued to apply a hands-off approach to the prosecution of marijuana violations.

Rather than just ignoring the expanding marijuana and hemp market, Congress itself has actively contributed to its creation. Since 2014, Congress has shielded state medical marijuana programs from potential enforcement actions. *See, e.g.,* Consolidated Appropriations Act of 2024, Sec. 531 (the "Rohrabacher-Farr Amendment"). Specifically, the DOJ could not use funds to "prevent states from implementing their own state laws that authorize the use, distribution, possession, or cultivation of medical marijuana." *Id.* Essentially, it contributed to a legal medical marijuana intestate market from roughly 2014 through 2024. Then, in 2018, Congress removed

PAGE 25 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY
INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

hemp from the definition of marijuana under the CSA, thus removing many products like CBD from its control. *See* Agriculture Improvement Act of 2018, Pub. L. 115-334 ("Farm Bill"); 29 U.S.C. § 802(16). This opened the door for coast-to-coast brick-and-mortar and online sales in addition to further involvement by the Food & Drug Administration in this interstate commerce www.fda.gov/news-events/public-health-focus/fda-regulation-cannabis-and-cannabis-derivedproductsincludingcannabidiolcbd#:~:text=FDA%2Dregulated%20products?,A.,products%20containing%20any%20other%20substance (last visited March 25, 2025). Plaintiff Ascend regularly sells hemp products online and in-store (below). https://www.pdxascend.com/shop/ (last visited March 27, 2025).



    The Farm Bill created the U.S. Domestic Hemp Production Program, a federal regulatory program overseen by the USDA to review state and Indian tribes who have submitted plans for the domestic production and sale of hemp. Oregon is one many that are USDA approved to process and sell hemp. https://www.ams.usda.gov/rules-regulations/hemp/state-and-tribal-plan-review (last visited March 28, 2025); OAR 603-048-0010, *et seq*. Oregon is actively involved in the federally legal interstate hemp market as are Plaintiffs.

PAGE 26 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

Recently, and under the directive of former President Biden, in 2022, marijuana was reviewed to determine whether it was properly scheduled under federal law. As a result, in May 2024, the DEA proposed a rule that would transfer marijuana from a Schedule I to Schedule III drug under the CSA "consistent with the view of the Department of Health and Human Services that marijuana has a currently accepted medical use." 89 Fed. Reg. 44597. This would allow marijuana to be prescribed at the federal level as part of a national healthcare market that authorizes the delivery and distribution of Schedule III substances over the internet. 21 U.S.C. § 829(b); 21 U.S.C. § 829(e). President Biden also pardoned U.S. citizens and lawful residents who "committed the offense of simple possession of marijuana in violation of the Controlled Substances Act." Proclamation No. 10467, 87 Fed. Reg. 61, 441 (Oct. 6, 2022).

Accordingly, the claim that Congress has somehow eliminated commerce in marijuana and hemp is hard to square with the continued expansion of state marijuana and hemp programs around the country that Congress has specifically acted to protect. There is no question that once the mere title of "illegality" is removed, no questions remain over whether interstate commerce exists as seen with the industrial hemp market. In light of this, it is difficult to reconcile that if Congress wanted to quash all commerce in cannabis when it passed the CSA, how giving states the option of banning only interstate commerce in cannabis would necessarily advance that goal.

For example, state laws that only bar the sale of imported marijuana, but not local marijuana, merely shift the focus of where marijuana is produced. Those import bans will not necessarily diminish the total volume of marijuana sold around the country. In other words, state bans on imports merely ensure that marijuana and hemp are produced by local firms rather than by growers based in other cannabis-friendly states. However, Oregon accepts the importation of

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

industrial hemp from out-of-state growers and uses out-of-state labs to test industrial hemp. OAR 603-048-1500(2)(b); OAR 603-048-1500(3)(b).

It is more compelling rather that the CSA has no bearing on whether an interstate market exists when enforcement of federal marijuana criminal laws is nonexistent and desuetude. *Poe v. Ullman*, 367 U.S. 497, 502, 81 S. Ct. 1752, 1755, 6 L. Ed. 2d 989 (1961). Or at least on a direct path to disapproval and repeal, much like the downfall of *Chevron* deference. *Buffington v. McDonough*, 143 S. Ct. 14, 22, 214 L. Ed. 2d 206 (2022) (Gorsuch, N., dissenting) (the government began to waive deference arguments while lower courts avoided applying it. Other courts refused such a broad interpretation. It was desuetude.); *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 411, 144 S. Ct. 2244, 2272, 219 L. Ed. 2d 832 (2024) (Not even *stare decisis* could save the application and reliance on *Chevron* that was unworkable, uncertain, and furthered complicated matters requiring correction of a "serious mistake"). A point for which the Court should not ignore.

**D.    Any Argument Made by State Defendants, Whether It Be Illegality or Unclean Hands, Will Fail.**

Once the Court finds that the NLRA does apply to cannabis employers, there is no reason for the Court to still dismiss based on the illegality doctrine or the unclean hands doctrine. It is unclear whether those doctrines are even relied upon by the State Defendants, yet given the recent ruling in the Southern District of California, it would be unwise not to address as set forth below.

/ / /

/ / /

/ / /

/ / /

PAGE 28 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

1.      **States Defendants are unlikely to succeed on any illegality argument[3] because this lawsuit does not implicate the Controlled Substances Act.**

It is a longstanding maxim of law that "[n]o court will lend its aid to a party who founds his claim for redress upon an illegal act." *The Fla*., 101 U.S. 37, 43, 25 L. Ed. 898 (1879). This is known as the doctrine of "*ex turpi causa non oritur actio*" or the "illegality doctrine." One of its earliest applications was rooted in a breach of contract action, where tea was sold, delivered, and illegally smuggled into England. *Holman v. Johnson* (1775) 1 Cowp 341, 343; 98 ER 1120. Today, courts still apply the doctrine to breach of contract claims and have so within the cannabis industry, such as when damages sought involved the lost profits of the business itself. *Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*, No. 3:18-CV-01104-HZ, 2020 WL 1855190, at *11 (D. Or. Apr. 13, 2020). Whether its application is tolerated for purposes of equitable relief is debatable. Nevertheless, the doctrine is not construed as a hard-fast rule, absolute bar, or automatic prohibition of relief actions involving cannabis businesses in federal court. *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1258 (D. Colo. 2022) ("[T]he mere fact that unlawful activity is involved in some way does not automatically foreclose contract relief; this includes contracts that might bear some relationship to marijuana."); *Burton v. Maney*, 610 B.R. 633, 637-38 (B.A.P. 9th Cir. 2020) (noting that "the mere presence of marijuana near a bankruptcy case does not automatically prohibit a debtor from bankruptcy relief"). The United States Bankruptcy Court for the Central District of California sarcastically pondered whether it should have dismissed PG&E of "Erin Brockovich fame," "Enron," or "Bernie Madoff" or even sex abuse cases simply because they were involved in criminal activity when it rejected the idea of a "zero tolerance" policy on illegality dismissals in bankruptcy cases. *In re Hacienda Co*., *LLC*, 647 B.R. 748, 754 (Bankr. C.D. Cal. 2023).

PAGE 29 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

Rather, it is evident that if the cause of action does not touch on an immoral or illegal act, the court will not deny one's ability to seek relief. *Ewell v. Daggs*, 108 U.S. 143, 149, 2 S. Ct. 408, 412, 27 L. Ed. 682 (1883). Or if the cause of action can be enforced without "commanding unlawful conduct," then the court cannot ignore general policy to prevent one from "getting other people's property for nothing when they purport to be buying it*." Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 80, 102 S. Ct. 851, 858, 70 L. Ed. 2d 833 (1982) (quoting *Kelly v. Kosuga*, 358 U.S. 516, 520-521, 79 S. Ct. 429, 432, 3 L.Ed.2d 475 (1959).

For example, when federal courts are asked to provide contractual relief that would enforce ongoing illegal activity those matters are dismissed. *Polk v. Gontmakher*, No. 2:18-CV-01434-RAJ, 2020 WL 2572536, at *2 (W.D. Wash. May 21, 2020) (plaintiff sought the court's assistance to enforce a verbal partnership contract seeking past and future profits from a cannabis business. The relief sought would perpetuate illegal federal activity and was dismissed). *Cf. Ginsburg v. ICC Holdings, LLC,* No. 3:16-CV-2311-D, 2017 WL 5467688, at *7 (N.D. Tex. Nov. 13, 2017) (the note set forth the terms of the loan, repayment, and interest which did not mention marijuana, or where the funds come from to pay off the loan. The relief sought would not perpetuate what the CSA forbade).

The Ninth Circuit has also noted in the context of cannabis copyright infringement actions that "the defense of illegality or unclean hands is recognized only rarely, when the plaintiff's transgression is of serious proportions and relates directly to the subject matter of the infringement action." *Dream Games of Arizona, Inc. v. PC Onsite*, 561 F.3d 983, 990-91 (9th Cir. 2009) (quotation omitted). Where the United States Supreme Court has stressed the need to show causation with the unclean hands defense, which like the illegality doctrine, looks at the plaintiff's

PAGE 30 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

misconduct. *See, e.g.*, *Keystone Driller Co. v. Gen. Excavator Co.,* 290 U.S. 240, 245, 54 S. Ct. 146, 78 L. Ed. 293 (1933) (unclean hands bars a plaintiff from seeking relief "only where some unconscionable act of [the plaintiff] has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation"). Thus, courts do not close their doors because of a plaintiff's misconduct, whatever its character, which has no relation to anything involved in the suit.

To the extent State Defendants argue illegality, which is not entirely clear, the application of the illegality doctrine in this precise context is not justified as the CSA is not implicated. Plaintiffs seek to invalidate a ballot measure that requires pre-unionization contracts between a labor union and employer where constitutional protections are displaced as a result.

### 2.    The remedy sought does not compel either party to violate the Controlled Substances Act.

Under the Controlled Substances Act, it is unlawful for anyone to "knowingly or intentionally . . . manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). "Controlled substance" is further defined as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B" of the CSA. 21 U.S.C. § 802. As it is well known, the CSA treats "marihuana," and any "material, mixture, or preparation" that contains such substance as a Schedule I drug. 21 U.S.C. § 812(c)(c)(10). Thus, the Ninth Circuit, along with other circuits, have made it clear that anyone who manufactures, distributes, or possesses marijuana for medical or recreational purposes commits a federal crime despite current holds on enforcement. *United States v. McIntosh*, 833 F.3d 1163, 1179 (9th Cir. 2016). Likewise, the conspiracy provision in the CSA states: "Any person who attempts or conspires to commit any offense defined in this title shall be

PAGE 31 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 21 U.S.C. § 846.

As discussed, one argument offered by Plaintiffs is that Measure 119 is preempted by the NLRA, which has repeatedly determined that cannabis employers must comply with the NLRA and that those employers fall within the jurisdiction of the NLRB. Compl. ¶¶ 63-73. Another argument put forth by Plaintiffs is that Measure 119 is unconstitutional under the Fourteenth Amendment, and it improperly restrains First Amendment speech protections and is void for vagueness. Compl. ¶¶ 74-82. Likewise, it violates equal protection and the freedom to contract. Compl. ¶¶ 83-96. Plaintiffs seek declaratory action to enjoin the enforcement of Measure 119 due to its blatant constitutional violations. Compl. ¶¶ 60-62; Prayer for Relief. The relief sought has no bearing on the distribution, dispensary, possession, or manufacture of marijuana. Plaintiffs are simply asking the Court to prevent them from entering into mandated labor contracts by enforcing their constitutional rights much like those who in the past used the federal courts to secure federal health benefits when marriage was federally defined as between opposite sexes.

In those circumstances and times, the courts did not recognize or further same-sex marriages that were considered illegal. Courts were enforcing equal protection and anti-discrimination laws when applied to federal health benefit plans that denied coverage based on sexual orientation or sex. The court in *In re Levenson*, for instance, determined the definition of "family member" under the federal health plan when read in conjunction with the Defense of Marriage Act (DOMA) precluded an extension of benefits to those not defined by "marriage," under DOMA. *In re Levenson*, 560 F.3d 1145, 1149 (9th Cir. 2009). Thus, in application, the denial of benefits to same-sex spouses was a violation of the Due Process Clause of the Fifth

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

Amendment as there was no rational basis to deny same-sex spouses health benefits. *Id.* In reaching

its decision, the *Levenson* court did not touch on the legality of marriage. Nor did it decline to hear

the matter because the plaintiff was partaking in illegal activity under federal law. The issue was

of equal application of federal health benefits.

Much like *Levenson*, Plaintiffs here seek to enforce their constitutional rights to enjoin a

ballot measure that infringes upon a multitude of constitutional protections that have nothing to do

with the legality of cannabis or how cannabis is offered to consumers in the State of Oregon.

Measure 119 is strictly a matter of employment and labor relations, which it just so happens to

encompass employers in the cannabis industry.

### 3.    The Court should proceed to decide the matter without regard for the illegality doctrine.

In this situation, when the relief sought does not implicate illegal activity, federal courts

proceed as they normally would. For example, in the Central District of California, a cannabis

consultant sued under federal law for misappropriation of its proprietary information by its former

officers. The defendants argued the actions were immune from federal law due to the illegal nature

of the business. In denying the defendants' motion for summary judgment, the *Siva* court

concluded the remedy sought would not compel either party to violate the CSA, and the dispute

did not encompass the production of marijuana. *Siva Enterprises v. Ott*, No. 2:18-CV-06881-

CAS(GJSX), 2018 WL 6844714, at *5 (C.D. Cal. Nov. 5, 2018). The claim could proceed. In fact,

the District of Oregon, in a wrongful death matter, allowed the estate to proceed with the recovery

of economic damage in the form of lost future earnings from the defendant, who was a cannabis

employer. *Tarr v. USF Reddaway, Inc.,* No. 3:15-CV-02243-PK, 2018 WL 659859, at *3 (D. Or.

Feb. 1, 2018). The *Tarr* defendant could not find any law to support its argument that when in

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

federal court recoverable economic damages against a cannabis employer are diminished because the injury was caused by an employee engaged in illegal federal activity. *Id.* Likely, because the illegality of the business has nothing to do with whether an injured plaintiff can recover provable damages sustained by the tortious acts of a defendant. Are federal courts to create different laws simply because one party is engaged in federally legal and illegal activity? Doubtful. The matters that have come before are clear, if the challenge to Measure 119 lacks any causal connection to the CSA and Oregon's marijuana regulatory scheme related to possession, consumption, and distribution of cannabis, the Court should hear the matter.

Furthermore, in applying the illegality doctrine, courts must consider several facts before barring a claim or action. Those include relative moral culpability, deterrence of illegal conduct, avoidance of unjust windfalls and forfeitures and how best to effect public policy. *Bassidji v. Goe*, 413 F.3d 928, 938 (9th Cir. 2005); *Sensoria, LLC v. Kaweske*, 581 F. Supp. 3d 1243, 1258–59 (D. Colo. 2022). Here, the policy considerations underlying employment and labor relations through civil litigation do not conflict with those underlying the CSA. Immunizing cannabis companies from labor relations undermines the policy objectives of the NLRA, devaluing protected rights while perversely incentivizing cannabis companies to remain in violation of the CSA to preserve their immunity. Such dangerous precedent will yield unintended results where cannabis employers no longer have to comply with federal discrimination, retaliation, and harassment laws, fair wages, disability accommodations, and safety and occupational health standards. The list is non-exhaustive, and the results of non-compliance are limitless.

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

4.    **The Southern District of California got *CTRL ALT DESTROY* wrong. The Unclean Hands Doctrine is not applicable to this matter before the Court.[4]**

As this Court is well aware, the United States District Court for the Southern District of California (the "California court") recently dismissed, under Fed. R. Civ. P. 12(b)(6), a cannabis employer's challenge to California's version of Measure 119 ("CAD"). *Ctrl Alt Destroy v. Elliott*, No. 24-CV-753 TWR (AHG), 2025 WL 790963 (S.D. Cal. Mar. 12, 2025).[5] In large part, the California court reasoned the unclean hands doctrine applied, which the CAD plaintiff mistakenly argued was an abstention argument. *Ctrl Alt Destroy,* 2025 WL 790963, at *6. And the California court refused to consider the "substantial public interest" exception to the unclean hands doctrine. *Ctrl Alt Destroy,* 2025 WL 790963, at *7. This was a regrettable error.

Much like the illegality doctrine, the unclean hands doctrine prevents a court in equity from using its judicial power to consummate "a transaction in clear violation of the law." *Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387, 64 S. Ct. 622, 624–25, 88 L. Ed. 814 (1944). The unclean hands doctrine is an equitable affirmative defense, where the party asserting must show that the alleged improper acts caused injury. *Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 407 (N.D. Tex. 2016), *aff'd as modified and remanded*, 725 F. App'x 256 (5th Cir. 2018); 37 C.F.R § 2.114(b)(2); *Am. Healthcare Admin. Servs., Inc. v. Aizen,* 285 A.3d

---

[4] State Defendants have not raised this argument. However, it is important to address this case because *Ctrl Alt Destroy* is not persuasive and was wrongly decided.

[5] *Ctrl Alt Destroy* challenged Cal. Bus. Prof. Code § 26051.5(5)(a)(i)-(5)(e)(iii), which textually varies from Measure 119. For example, in California the LPA applies to employers with 20 or more employees. Measure 119 applies despite no employees. The California LPA term "labor organization," is not defined like Measure 119, which relies on the NLRA's definition of "labor organization." The statutes also substantially differ in defining "labor peace agreement." *See* Cal Bus. Prof. Code § 26001(ac).

PAGE 35 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

461, 485 (Del. Ch.). It applies to the government as well as to private litigants. *E.E.O.C. v. Recruit U.S.A., Inc.,* 939 F.2d 746, 752 (9th Cir. 1991).

However, it is not a doctrine of punishment applied as an absolute bar to a plaintiff who has violated the law, as the California court so wrongly concluded. In determining whether the CAD plaintiff's for-profit business was engaged in "ongoing violations of federal law," the California court held it had unclean hands and could not proceed in equity to challenge the LPAs. *Ctrl Alt Destroy,* 2025 WL 790963, at *5. Yet the unclean hands doctrine is not so definitive; it is applied "upon considerations that make for the advancement of right and justice." *Johnson*, 321 U.S. at 387. The doctrine "does not apply to every unconscientious act or to all inequitable conduct. Equity does not demand that its suitors have led blameless lives, but does require that *they have acted fairly and without fraud or deceit as to the controversy at issue*." 27A Am. Jur. 2d Equity § 21 (emphasis added). The California court failed to apply this important principle, which would be viewed as an abuse of discretion. *Northbay Wellness Grp., Inc. v. Beyries,* 789 F.3d 956, 960 (9th Cir. 2015). Likewise, whether the doctrine applies is a question of fact and likely not appropriate on the CAD defendants' Fed. R. Civ. P. 12 motion to dismiss. *Brewster v. City of Los Angeles,* 672 F. Supp. 3d 872, 1003 (C.D. Cal. 2023) (for the notion that the doctrine is a question of fact). Instead, had the California court correctly balanced the wrong amongst both parties and "weigh[ed] the substance of the right asserted by plaintiff against the transgression which, it is contended, serves to foreclose that right," the matter would likely not have been dismissed. *Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 350 (9th Cir. 1963).

First, the California court failed to recognize any causal connection between the misconduct and the claim for which the plaintiff proceeded. It is well established that misconduct

PAGE 36 - PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

"unrelated to the claim to which it is asserted as a defense, does not constitute unclean hands." *Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963) ("what is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts, or that the manner of dirtying renders inequitable the assertions of such rights against the defendant."). Like the CAD plaintiff, Plaintiffs seek equitable relief to enforce their constitutional rights that Measure 119 infringes upon. Plaintiffs are asking the Court to enjoin the enforcement of Measure 119 and rule it unconstitutional. Compl. ¶¶ 60-62; Prayer for Relief. Measure 119 does not attempt to use the Court to distribute or manufacture marijuana in the State of Oregon nor do Plaintiffs ask that or seek relief that implicates the CSA. *Supra argument D2.*

Second, the California court failed to weigh the wrongdoing of the defendants, who were more at fault than the CAD plaintiff. For example, and as applicable here, while Plaintiffs admit they are Oregon-licensed cannabis retailers and processors, for which is in direct violation of the CSA, State Defendants also violate the CSA and are conspirators and accomplices thereto. 29 U.S.C. § 846; 18 U.S.C. § 2. Additionally, State Defendants are violating numerous other constitutional rights that would not be tolerated in any other circumstance. Assuming the NLRA applies to cannabis employers (which it does), and assuming the same protections of the United States Constitution extend to cannabis employers (which they do), then the State Defendants' wrongdoing in enforcing Measure 119 is greater than that of Plaintiffs in this matter.

Third, the California court wrongly decided that the "substantial public interest" exception did not apply because the CAD plaintiff's federal rights were not at issue and "meritless." *Ctrl Alt Destroy,* 2025 WL 790963, at *7. In the present matter, Measure 119 is vastly different from the California LPA. The California LPA did not require "neutralization," which has significant and

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

distinct constitutional implications that were not present or argued in California. The California court also denied the exception because it thought the CAD plaintiff was barred due to the illegality of marijuana under the CSA and that the LPA was a reasonable attempt at a newly legalized commercial industry. This was simply untrue, given the NLRB had been involved in California's medical cannabis industry since 2013 and before recreational marijuana was legalized in the State of California. Also, there was no indication that the CAD plaintiff was also engaged in the processing or sale of federally legal industrial hemp. The California court did mention, though, that had California "arbitrarily or egregiously" violated the Constitution through its regulatory scheme, then application of the substantial interest exception may apply and for a federal court to intervene. *Id.* That opportunity is before this Court now.

Fourth, the California court in looking for support from other cases, held the matter was barred because the commercial cannabis industry has no federal protections due to the federally illegal market. *Peridot Tree, Inc. v. City of Sacramento*, No. 2:22-CV-00289-KJM-SCR, 2024 WL 4857648, at *6 (E.D. Cal. Nov. 21, 2024). Yet it failed to consider the numerous other federal laws that have applied to the cannabis industry. The California court completely ignored the Ninth Circuit 2024 case, *Peridot Tree, Inc. v. City of Sacramento*, which alluded to the application of the dormant Commerce Clause to the cannabis industry as held by the First Circuit in *Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542, 544 (1st Cir. 2022). *Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 936 (9th Cir. 2024). The California court failed to mention that the ruling on remand in *Peridot Tree* as to whether the dormant Commerce Clause was inapplicable is pending appeal for the second time. *Peridot Tree, Inc. v. City of Sacramento*, 24-7196 (9th Cir. Nov. 27, 2024). It is likely the Ninth Circuit will find the dormant Commerce

Clause applicable to cannabis employers, which is somewhat relevant here to whether the NLRA applies, although not dispositive.

Lastly, the California court failed to consider the federally legal hemp interstate market that runs alongside the federally illegal marijuana interstate market. Let alone that the CSA was enacted to combat the illegal drug market by way of drug lords and cartels, not commercial activity made legal by states that is highly regulated and not pursued by the federal government.

## E.    Measure 119 Must Be Enjoined in the Entirety. It Cannot Be Severed.

At the February oral arguments, the Court fashioned whether there was a statute that allowed for the severability of the unconstitutional provisions of Measure 119. While the answer is yes, the statute will not save Measure 119 in the event the Court agrees it is unconstitutional. As this Court is aware, whether the unconstitutional sections of Measure 119 are severable from the remaining sections is a matter of state law and legislative intent. *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 818, 109 S. Ct. 1500, 1509, 103 L. Ed. 2d 891 (1989); *Dodd v. State Indus. Acc. Comm'n*, 211 Or. 99, 110, 311 P.2d 458, 459 (1957). Under ORS 174.040, "if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless: (1) The statute provides otherwise; (2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or (3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent." ORS 174.040(1)-(3). Should the Court find that Measure 119 is unconstitutional, it is Plaintiffs' position that the entire measure cannot stand due to sections 2 and 3 of ORS 174.040.

PAGE 39 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

The sections of Measure 119 that are at issue include Section 3(1)(b) and (1)(g), the definitions of "bona fide labor organization," and  "labor peace agreement, " as well as Section 3(2)(a)-(b), the requirement to enter into a labor peace agreement upon licensure. Should those sections be determined unconstitutional, then Sections 3(3)-(4) (practically the remainder of the measure) no longer apply as those sections are preconditioned upon Section 3(2) occurring; thus, they are dependent upon the unconstitutional part and are also incomplete without.

As stated within Measure 119, the purpose was to secure workplace rights of cannabis workers that were not adequately protected at the federal level. Scott Decl. ¶ 13; Ex. 6.  To achieve this purpose, Measure 119 would require cannabis businesses "to enter into an agreement that allows employees to organize and speak without fear of retaliation." *Id.* Thus, Section 3(2) is the primary focus and operating section of Measure 119. Without this section, there is no legal requirement that a cannabis employer enter into any agreement, meaning the purpose of Measure 119 cannot be achieved without it and the remaining sections "would lose [their] teeth." *Mil-Ray v. EVP Int'l, LLC*, No. 3:19-CV-00944-YY, 2020 WL 3317931, at *7 (D. Or. Mar. 17, 2020), *report and recommendation adopted*, No. 3:19-CV-00944-YY, 2020 WL 3316979 (D. Or. June 18, 2020).

Moreover, while Measure 119 was a voter-approved ballot measure that passed following the UCFW's lobbying efforts, HB 3183's legislative history is relevant to the issue of severability (along with preemption). It is well known that HB 3183, the bill equivalent of Measure 119, died in the Oregon House in June 2023 following further legal review of its constitutionality. Scott Decl. ¶ 12, Ex. 5. It was determined that the problematic portions of Measure 119 contained in HB 3183 were preempted by the NLRA under *Garmon* and *Machinists. Id.* Thus, the legislature

PAGE 40 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2

preferred to avoid enacting a bill that raised serious questions of constitutionality. *See, e.g., State v. Borowski*, 231 Or. App. 511, 529, 220 P.3d 100, 109 (2009) (there is a presumption that had the legislature known of the serious constitutional implications, it would have avoided the issue in its entirety). In this matter, the history of Measure 119 alludes to the assumption that if the voters had known Measure 119 raised serious doubts of constitutionality, the voters would not have approved it.

### III.    CONCLUSION

State Defendants casually ask this Court to slide head-first down a slippery slope and find its violation of one federal statute (the CSA) exempts it from another (the NLRA). A company cannot affirmatively choose to operate its business in violation of the law and simultaneously avoid compliance with another law that *a majority of* lawful businesses in the country must follow. Allowing so would result in lawlessness with a far-reaching impact well beyond the NLRA and CSA. If State Defendants are right (and they are not) that the CSA exempts businesses in Oregon's state-sanctioned cannabis industry from complying with the NLRA, where does it end? If the Court rules the CSA exempts businesses operating in Oregon's cannabis industry from NLRA coverage, businesses with even tangential interaction with Oregon's state-sanctioned marijuana industry will claim they too are exempt from coverage (*i.e.,* the security guards performing their job duties; the manufacturer of the armored trucks the security guards drive; the producer of the uniforms employees wear; the energy companies providing power to the marijuana producers; the gas companies used to fill trucks transporting marijuana; the manufacturers of the sprinklers used in marijuana production, etc.). They will then proceed to tear down any federal law that may arguably apply, like anti-discrimination and harassment laws, using this case as a dangerous precedent to

**FISHER & PHILLIPS LLP**
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

support. The reverse will also be true; cannabis employers will lose protections afforded to them under the United States Constitution. What will stop the State of Oregon from enacting laws that target the cannabis industry to eliminate any rights afforded to them through the Fourteenth Amendment or to enact laws that unfavorably treat other state residents? This cannot be so.

Instead, numerous cases support that Oregon's cannabis industry (along with the rest of the nation) is one in which the NLRA applies. The illegality of the business activity does not prevent it from complying with federal laws. Having determined this, Measure 119 will fail as preempted by the NLRA and for the numerous constitutional violations it touches upon.

DATED this 31st day of March, 2025.

FISHER & PHILLIPS LLP

*s/ Stephen M. Scott*
Stephen M. Scott, OSB No. 134800
smscott@fisherphillips.com
Todd A. Lyon, OSB No. 076706
tlyon@fisherphillips.com
Alexander A. Wheatley, OSB No. 105395
awheatley@fisherphillips.com
Janelle W. Debes, OSB No. 211543
jdebes@fisherphillips.com
Telephone: (503) 242-4262
Facsimile: (503) 242-4263

Attorneys for Plaintiffs

PAGE 42 -  PLAINTIFFS' SUPPL. BRIEF ISO ITS MOTION FOR PRELIMINARY INJUNCTION

FISHER & PHILLIPS LLP
111 SW Fifth Avenue, Suite 4040
Portland, Oregon 97204
(503) 242-4262

FP 54359036.2