# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CASALA, LLC**, d/b/a Bubble's Hash; and **REC REHAB CONSULTING LLC**, d/b/a Ascend Dispensary, <br><br> Plaintiffs, <br><br> v. <br><br> **TINA KOTEK**, in her official capacity as Governor of the State of Oregon; **DAN RAYFIELD**, in his official capacity as Attorney General of the State of Oregon; **DENNIS DOHERTY**, in his official capacity as Chair of the Oregon Liquor and Cannabis Commission; and **CRAIG PRINS**, in his official capacity as Executive Director of the Oregon Liquor and Cannabis Commission, <br><br> Defendants. | Case No. 3:25-cv-244-SI <br><br> **OPINION AND ORDER** |

Stephen M. Scott, Todd A. Lyon, Alexander A. Wheatley, and Janelle W. Debes, FISHER & PHILLIPS LLP, 111 SW Fifth Avenue, Suite 4040, Portland, OR 97204. Of Attorneys for Plaintiffs.

Dan Rayfield, Attorney General, Sadie Forzley, Senior Assistant Attorney General, and YoungWoo Joh, Assistant Attorney General, OREGON DEPARTMENT OF JUSTICE, 100 SW Market Street, Portland, OR 97201. Of Attorneys for Defendants.

Noah T. Barish, MCKANNA BISHOP JOFFE LLP, 1635 NW Johnson Street, Portland, OR 97209. Of Attorneys for *Amicus Curiae* Oregon AFL-CIO.

**Michael H. Simon, District Judge.**

Casala LLC, d/b/a Bubble's Hash ("Bubble's Hash"), and Rec Rehab Consulting LLC, d/b/a Ascend Dispensary ("Ascend") (collectively, "Plaintiffs"), brought this lawsuit against Oregon Governor Tina Kotek, Oregon Attorney General Dan Rayfield, Chair of the Oregon Liquor and Cannabis Commission ("OLCC") Dennis Doherty, and Executive Director of the OLCC Craig Prins (collectively, "Defendants"), in their official capacities. Plaintiffs seek declaratory and injunctive relief, including a permanent injunction enjoining Defendants from enforcing against Plaintiffs the United for Cannabis Workers Act, passed by an initiative approved by Oregon voters in 2024 as Ballot Measure 119 ("Measure 119"). Plaintiffs contend that Measure 119: (1) is preempted by the National Labor Relations Act ("NLRA") and its enforcement would be in violation of the Supremacy Clause of the United States Constitution (Count One);[1] (2) is void for vagueness in violation of the Due Process Clause of the United States Constitution (Count Two); (3) abridges Plaintiffs' freedom of speech in violation of the First Amendment, as made applicable to the States by the Fourteenth Amendment (Count Three); (4) infringes on Plaintiffs' right to equal protection in violation of the Fourteenth Amendment (Count Four); and (5) disrupts Plaintiffs' contractual arrangements in violation of the Contract Clause of the United States Constitution (Claim Five).

The Court previously scheduled a preliminary injunction hearing to be held on April 29, 2025. On April 15, 2025, Defendants filed an unopposed motion to consolidate the preliminary

---

[1] Bubble's Hash filed a complaint with the National Labor Relations Board ("NLRB"), but the NLRB stated that it lacked jurisdiction to hear that complaint. ECF 13 ("Haley Decl.") ¶ 9. In Plaintiffs' reply in support of their motion for preliminary injunction (ECF 25), Plaintiffs concede that Bubble's Hash is beyond the jurisdiction of the NLRA and cannot bring an action for declaratory or injunctive relief based on preemption grounds. Thus, the Court refers only to Ascend when evaluating whether Measure 119 is preempted by the NLRA.

injunction hearing with a final trial on the merits, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. ECF 45. The Court granted that motion and heard argument on the merits on April 29, 2025, based on the written record in this case. *See* ECF 47.

The Court now finds by a preponderance of the evidence the facts stated below. The Court also makes the conclusions of law contained below. For the reasons explained below, the Court grants the requested declaratory and permanent injunctive relief, after concluding that Measure 119 is preempted by the NLRA in violation of the Supremacy Clause and violates Plaintiffs' First Amendment rights, and that all requirements for permanent injunctive relief have been satisfied.

## STANDARDS

To obtain permanent injunctive relief, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). The final two factors "merge" into one when "the Government is the party opposing the injunction." *Galvez v. Jaddou*, 52 F.4th 821, 831 (9th Cir. 2022) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009) (applying merged factors in stay context)). This is because "the government's interest *is* the public interest." *Pursuing Am.'s Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016) (emphasis in original) (applying merged factors in preliminary injunction context).

## BACKGROUND

### A. Measure 119

In November 2024, Oregon voters approved by initiative Measure 119, which took effect on December 5, 2024. ECF 1-4. Measure 119 "[e]nsure[s] that businesses licensed to sell or process cannabis enter into an agreement that allows their employees to organize and speak out without fear of retaliation." ECF 1-3 at 1. The measure also states that the Oregon Liquor and Cannabis Commission ("OLCC") "shall require the applicant to submit, along with an application for a license or certification or renewal of a license or certification [to dispense marijuana]" a "signed labor peace agreement entered into between the applicant and a bona fide labor organization actively engaged in representing or attempting to represent the applicant's employees" or an "attestation signed by the applicant and the bona fide labor organization stating that the applicant and the bona fide labor organization have entered into and will abide by the terms of a labor peace agreement." *Id.* Oregon law defines a "labor peace agreement" ("LPA") as "an agreement under which, at a minimum, an applicant or licensee agrees to remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the licensee about the rights afforded to such employees under [Oregon Revised Statutes §] 663.110." *Id.*

### B. Plaintiffs

#### 1. Ascend

Ascend is a state-licensed recreational marijuana retailer located in Portland, Oregon. ECF 12 ("Born Decl.") ¶¶ 2-3. Ascend has been operating since March 2019, does more than $500,000 in annual sales, and has eight employees. *Id.* ¶¶ 4, 17. After the passage of Measure 119, Ascend searched for a union with which it could agree to an LPA. *Id.* ¶ 5. Ascend states that it was told that only two unions had the authority to sign an LPA under Measure 119.

*Id.* Ascend then contacted both unions. *Id.* ¶ 6. Ascend, however, understood the terms required

by the unions to be "neither fair or legal under state or federal law." *Id.* For example, the unions

stated that they require unfettered access to Ascend's premises and the disabling of a 24-hour

camera surveillance system during meetings. *Id.* According to Ascend, the unions also stated that

they require employers to remain "neutral and not voice any opinion for or against unionization

if asked." *Id.* Thus, Ascend was unable to reach agreement with either union. *See id.* ¶ 7.

On February 1, 2025, Ascend submitted its license renewal application and paid the

required fee to the OLCC. *Id.* ¶ 9. Ascend did not include either a signed LPA or an attestation

that one had been signed. *Id.* Ascend's application also lacked the requisite tax compliance

certification. ECF 21 ("Hoffeditz Decl.") ¶ 5. On February 4, 2025, the OLCC notified Ascend

that its application was incomplete, stating:

> 1) Thank you for your MJ License renewal. Unfortunately, we
> cannot process it until you have uploaded a signed labor peace
> agreement or attestation between the licensee and a labor
> organization. This is a voter initiate measure and OLCC cannot
> provide recommendations as we need to remain neutral. Once you
> submit a signed labor peace agreement or attestation, we can
> complete your license renewal. I have attached the compliance
> bulletins to this email.
>
> 2) Thank you for submitting your renewal application for the 2025-
> 2026 license year.
>
> Under OAR 845-025-1190(2)(c) & (3), any retailer licensee whose
> license expires on or after September 15, 2023, will be required to
> submit an Oregon Department of Revenue (DOR) Certificate of
> Tax Compliance for all applicants listed on the license. The
> certificate of tax compliance must be issued within 90 calendar
> days of the license expiration date. Failure to submit the required
> DOR certificate(s) of tax compliance for all applicants on your
> license will result in your application to be considered incomplete
> and will not be processed. This will result in your license not being
> valid . . . .

*Id.* ¶¶ 5-7, Ex. 1. On February 10, 2025, Ascend uploaded the missing tax compliance certificate, and later that day the OLCC notified Ascend that OLCC "cannot process" its license renewal "until you have uploaded a signed labor peace agreement or attestation." *Id.* ¶¶ 9-10, Ex. 1.

### 2. Bubble's Hash

Bubble's Hash is a state-licensed recreational marijuana processor located in Portland, Oregon. ECF 13 ("Haley Decl.") ¶¶ 2-3. Bubble's Hash has been operating since May 2023 and has two employees. *Id.* ¶¶ 5, 11. Bubble's Hash invested $435,000 to start this business. *Id.* ¶ 11.

Bubble's Hash's license is due for renewal on May 22, 2025. *Id.* ¶ 4. Bubble's Hash has not yet signed an LPA. *Id.* ¶ 11. Bubble's Hash contacted one union and left a message but never received a call back. *Id.* ¶ 7. Bubble's Hash filed a complaint with the National Labor Relations Board ("NLRB"), but the NLRB stated that it lacked jurisdiction to hear that complaint. *Id.* ¶ 9. Bubble's Hash states that it is not subject to the NLRA because its retail sales currently fall below the NLRA's jurisdictional threshold. *Id.*

### DISCUSSION

## A. Standing

Defendants challenge Plaintiffs' standing to bring this case, arguing that Measure 119 does not affect employer or employee rights, and that Plaintiffs are not entitled to sue on behalf of their employees. To have standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). In addition, the required personal interest must satisfy three elements throughout the litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and particularized, as well as actual or imminent; (2) a causal connection between the injury in fact and the defendant's challenged behavior; and (3) a likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81; *see also Spokeo, Inc. v.*

*Robins*, 578 U.S. 330, 338 (2016) (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

The Ninth Circuit addressed a similar question in *Airline Service Providers Ass'n v. Los Angeles World Airports* ("*ASPA*"), holding that a trade association had standing to challenge a state labor regulation. *See* 873 F.3d 1074 (9th Cir. 2017). In *ASPA*, the City of Los Angeles enacted a regulation that required airline service providers to enter into an LPA with any employee organization that requested one. *Id.* at 1077. A trade association of service providers sued, arguing that this regulation was preempted by the NLRA. *Id.*

The Ninth Circuit held that each member of the association had suffered an injury in fact because the association alleged that its members would be "forced into unwanted negotiations that must terminate in either an agreement or arbitral award," and thus "[t]he time spent in those negotiations is itself a concrete injury." *Id.* at 1078. The court also concluded that the plaintiff sufficiently had shown causation because the LPA was a mandatory component of the city's standard licensing contract. *Id.* Finally, the Ninth Circuit held that the association had shown redressability because if the regulation were enjoined based on federal preemption, the members of the association "would not suffer any adverse consequences of complying with it." *Id.* at 1079.

Applying the same reasoning as in *ASPA*, Plaintiffs here have standing. Plaintiffs allege that they will be and have been forced into negotiations with labor organizations, which they would not have had to undergo but for Measure 119. The risk of having to undergo these negotiations constitutes a concrete injury. If Measure 119 were enjoined, Plaintiffs would not suffer the adverse consequences of complying with it. Thus, Plaintiffs have sufficiently alleged standing.

**B. Preemption**

Among other contentions, Ascend argues that Measure 119 is preempted by the NLRA because Measure 119 regulates activity clearly within the scope of the NLRA where Congress has determined that states should not intervene. Specifically, Ascend contends that Measure 119 implicates an employer's right to speech and an employee's right to choose its labor representation, rights guaranteed by the NLRA. Defendants respond that Measure 119 and the required LPA do not implicate employer or employee rights protected by the NLRA. Defendants also argue that Measure 119 is exempt from preemption because the cannabis industry is deeply rooted in local responsibility.

**1. Legal Standards**

**a. Generally**

The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const., art. VI, cl. 2. Thus, federal law preempts state law when the two conflict.

Section 7 of the NLRA protects the right of employees "to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8 bars unfair labor practices and makes it illegal "for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in" Section 7. *Id.* § 158(a)(1).

In *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959), and *Lodge 76, International Ass'n of Machinists v. Wisconsin Employment Relations Commission*, 427 U.S. 132 (1976), the Supreme Court held that the NLRA preempts "(1) laws that regulate conduct that is either protected or prohibited by the NLRA . . . , and (2) laws that regulate in an area Congress intended to leave unregulated or 'controlled by the free play of economic forces.'" *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 887 (9th Cir. 2018) (quoting *Chamber of Com. v. Brown*, 554 U.S. 60, 65 (2008)). The first form of preemption is known as "*Garmon* preemption," and the second is known as "*Machinists* preemption." *Id.* Ascend argues, in the alternative, that both forms of preemption apply here.

### b. *Garmon* Preemption

*Garmon* preemption is "unusual" in its breadth. *Glacier Nw., Inc. v. Int'l Bhd. of Teamsters Loc. Union No. 174*, 598 U.S. 771, 776 (2023). The NLRA "preempts state law even when the two only *arguably* conflict." *Id.* (emphasis in original). *Garmon* preemption "goes beyond the usual preemption rule," forbidding states from regulating conduct "that the NLRA protects, prohibits, or arguably protects or prohibits." *Id.* (quoting *Wis. Dep't of Indus., Lab. & Hum. Rels. v. Gould Inc.*, 475 U.S. 282, 286 (1986)). The purpose of this broad doctrine is to address not only actual conflict but also "the *potential* for conflict with federal policy." *Retail Prop. Tr. v. United Bhd. of Carpenters*, 768 F.3d 938, 952 (9th Cir. 2014) (emphasis in original). *Garmon* preemption is "designed to prevent 'conflict in its broadest sense' with the 'complex and interrelated federal scheme of law, remedy, and administration'" contained in the NLRA. *Gould*, 475 U.S. at 286 (quoting *Garmon*, 359 U.S. at 243). This doctrine recognizes that the NLRA affords "primary interpretation and application of its rule to a specific and specially constituted tribunal." *Garner v. Teamsters*, 346 U.S. 485, 490 (1953). Federal courts "are not primary tribunals to adjudicate such issues," which must be "left in the first instance to the

[National Labor Relations] Board." *Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 390 (1986) (quotation marks omitted).

Despite the breadth of *Garmon* preemption, the Supreme Court has recognized several exceptions, including "where the activity regulated was a merely peripheral concern" or "touched interests . . . deeply rooted in local feeling and responsibility." *Garmon*, 359 U.S. at 243-44. Determining whether the regulation concerns deeply rooted local interests "involves a sensitive balancing of any harm to the regulatory scheme established by Congress, either in terms of negating the Board's exclusive jurisdiction or in terms of conflicting substantive rules, and the importance of the asserted cause of action to the state as a protection to its citizens." *Loc. 926, Int'l Union of Operating Eng'rs v. Jones*, 460 U.S. 669, 676 (1983).

To establish *Garmon* preemption, a plaintiff must show that "there is an arguable case for pre-emption." *Davis*, 476 U.S. at 397. "This is not a demanding standard." *Idaho Bldg. & Constr. Trades Council v. Inland Pac. Chapter of Associated Builders & Contractors*, 801 F.3d 950, 965 (9th Cir. 2015). Although *Garmon* preemption requires more than "a conclusory assertion" that the NLRA arguably protects or prohibits conduct, all a plaintiff must do is "advance an interpretation of the [NLRA] that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the Board." *Davis*, 476 U.S. at 394-95. A plaintiff must "put forth enough evidence to enable the court to find that the Board reasonably could uphold a claim based on such an interpretation." *Id.* at 395. "Even when a court is unsure" as to whether a particular activity is governed by the NLRA, the determination should be left to the NLRB in the first instance. *Bassette v. Stone Container Corp.*, 25 F.3d 757, 760 (9th Cir. 1994) (citing *Garmon*, 359 U.S. at 244-45).

### c. *Machinists* Preemption

In addition to preempting laws that regulate arguably protected conduct, the NLRA also preempts laws that regulate in an area Congress intended to leave "controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140 (quotation marks omitted). *Machinists* preemption seeks to "preserve Congress' intentional balance between the uncontrolled power of management and labor to further their respective interests." *Buildings & Constr. Trades Council of the Metro. Dist. v. Associated Builders & Contractors of Mass./R.I., Inc.*, 507 U.S. 218, 226 (1993) (cleaned up) (quoting *Golden State Transit Corp. v. City of Los Angeles*, 475 U.S. 608, 614 (1986)). The purpose of *Machinists* preemption is to guarantee "an equitable process for determining terms and conditions of employment." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 753 (1985).

Relevant to the pending case, *Machinists* preemption "bars states from . . . regulating non-coercive labor speech by an employer." *Interpipe Contracting, Inc*, 898 F.3d at 887. This rule reflects Congress's determination that "the dangers that free expression might entail . . . were a lesser risk than to have the Board police employer or union speech." *NLRB v. Gen. Elec. Co.*, 418 F.2d 736, 773 (2d Cir. 1969) (Friendly, J., concurring and dissenting); *see also Intertape Polymer Corp. v. NLRB*, 801 F.3d 224, 238 (4th Cir. 2015) ("Permitting the fullest freedom of expression by each party nurtures a healthy and stable bargaining process." (cleaned up)).

### 2. Analysis

#### a. NLRA Applicability to the Cannabis Industry

A threshold question in this case is whether the NLRA applies to cannabis businesses, given that the use of cannabis is illegal under federal law. Defendants originally argued that Ascend failed to establish that the NLRA applies to cannabis businesses, but now concede that

the NLRA likely applies to cannabis businesses.[2] Ascend argues that the NLRA applies to its business and adds that only half of Ascend's business relate to marijuana, while the other half relates to hemp sales, which is legal under federal law. *See* 21 U.S.C. § 802(16)(B).

The Court agrees that the NLRA likely applies to Ascend's business. The NLRA does not limit its jurisdiction to "lawful commerce" or "legal substance," as some other federal laws do. The NLRB has issued advisory memoranda dating back to 2013, in which it has stated that the medical marijuana industry is within the NLRB's jurisdiction if the business meets the NLRA's jurisdictional monetary requirements. *See* October 25, 2013 Advice Memorandum (Wellness

---

[2] Defendants also argue that it is possible that the NLRA does not apply to cannabis businesses because regulation of federally illegal businesses may exceed Congress's authority under the Commerce Clause. In support, Defendants cite cases involving challenges under the dormant Commerce Clause to state residency requirements for medical marijuana. Plaintiffs respond that the First Circuit has held that Congress has the authority to regulate the cannabis industry. *See Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me.*, 45 F.4th 542, 547-48 (1st Cir. 2022) (holding that Congress has authority to regulate the cannabis industry under the Commerce Clause, in part because "there is an established, *albeit illegal*, interstate market" in cannabis (emphasis in *Ne. Patients Grp.*) (quoting *Gonzales v. Raich*, 545 U.S. 1, 18 (2005))). District courts have mixed opinions on whether the dormant Commerce Clause applies to federally illegal markets. *Compare Brinkmeyer v. Wash. State Liquor & Cannabis Bd.*, 2023 WL 1798173, at *11 (W.D. Wash. Feb. 7, 2023) ("The dormant Commerce Clause does not apply to federally illegal markets, including Washington's cannabis market . . . ."), *and Peridot Tree WA Inc. v. Wash. State Liquor & Cannabis Control Bd.*, 2024 WL 69733, at *9 (W.D. Wash. Jan. 5, 2024) ("Peridot cannot use the dormant Commerce Clause to demand a constitutional right to participate in an illegal interstate market."), *with Finch v. Treto*, 606 F. Supp. 3d 811, 833 (N.D. Ill. 2022) (holding that "because [the cannabis] industry has been legalized by Illinois (and many other states), it is likely to affect interstate commerce, no matter its federal status," and thus plaintiffs were likely to succeed on their claim under the dormant Commerce Clause), *aff'd in part, dismissed in part on other grounds*, 82 F.4th 572 (7th Cir. 2023). The Ninth Circuit has not yet addressed this question, and the Court finds the cases holding that Congress may regulate the cannabis industry persuasive.

Connection of Maine)[3]; July 31, 2015 Advice Memorandum (High Level Health).[4] These

memoranda explain that the medical marijuana business is a multi-billion-dollar industry. The

memoranda also note that the U.S. Department of Justice ("DOJ") had issued guidance that

advises federal prosecutors not to expend resources on state medical marijuana cases and that the

DOJ has announced that it would not seek to preempt state medical marijuana laws. Further,

congressional appropriation riders dating back to 2014 "have prohibited the use of any DOJ

funds that prevent states with medical marijuana programs . . . from implementing their state

medical marijuana laws." *United States v. Kleinman*, 880 F.3d 1020, 1027 (9th Cir. 2017); *see

also Peridot Tree, Inc. v. City of Sacramento*, 94 F.4th 916, 923-24 (9th Cir. 2024) (citing

*Kleinman* in describing appropriations riders and DOJ guidance).

In addition, the D.C. Circuit in *Absolute Healthcare v. NLRB* accepted that the NLRB had

jurisdiction over allegations that a medical marijuana business committed unfair labor practices.

*See* 103 F.4th 61, 67 (D.C. Cir. 2024). Defendants argue that the concurrence in *Absolute

Healthcare* stated that it is "hazy" whether the NLRA applies to a cannabis business, given that

marijuana is illegal at the federal level. *See id.* at 72-73 (Walker, J., concurring). But this

statement in the concurrence is merely dicta. The Court finds more persuasive the majority's

conclusion that the NLRB had jurisdiction.

The parties also cite other examples of federal laws that courts have applied to the

cannabis industry. *See Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1110 (10th Cir. 2019) (holding

that the Fair Labor Standards Act applies to workers in the marijuana industry, explaining that

---

[3] https://apps.nlrb.gov/link/document.aspx/09031d4581841f95 (last visited May 19, 2025).

[4] https://apps.nlrb.gov/link/document.aspx/09031d45830d1121 (last visited May 19, 2025).

"employers are not excused from complying with federal laws because of their other federal violations" (quotation marks omitted)); *Greenwood v. Green Leaf Lab LLC*, 2017 WL 3391671, at *2-3 (D. Or. July 13, 2017), *report and recommendation adopted*, 2017 WL 3391647 (D. Or. Aug. 7, 2017) (applying Fair Labor Standards Act to marijuana business); *Smith v. 116 S Mkt. LLC*, 831 F. App'x 355, 356 (9th Cir. 2020) (unpublished) (applying the Americans with Disabilities Act to facilities including a cannabis building); *Aichele v. Blue Elephant Holdings, LLC*, 292 F. Supp. 3d 1104, 1112 (D. Or. 2017) (allowing cannabis worker's retaliation claim under Title VII of the Civil Rights Act of 1964, without opining on the impact of the legality of the workplace); *United States v. Sullivan*, 274 U.S. 259, 263 (1927) (holding that unlawful businesses must still pay federal taxes). The Occupational Safety and Health Administration ("OSHA") also has resolved cases involving cannabis processing and growing facilities. *See* OSHA Inspection 1572011.015 - Trulieve Holyoke Holdings Llc[5]; OSHA Inspection 1574997.015 - Pharmacann Inc.[6] These decisions and actions are consistent with a fair reading of the NLRA as a broad statute that largely displaces state labor laws. Further, they support the conclusion that the NLRA applies to regulate employee-employer relationships, even in the cannabis industry.

Finally, all that Ascend needs to show is that the NLRA "arguably" applies to the cannabis businesses. The NLRB advice memoranda, as well as the materials cited by Ascend, support the conclusion that the NLRA applies to the cannabis industry in a way that is not "plainly contrary" to the NLRA's text and that has not been "authoritatively rejected." Ascend

---

[5] https://www.osha.gov/ords/imis/establishment.inspection_detail?id=1572011.015 (last visited May 19, 2025).

[6] https://www.osha.gov/ords/imis/establishment.inspection_detail?id=1574997.015 (last visited May 19, 2025).

need not definitively show that the NLRA applies to cannabis businesses for its preemption

claim to succeed. Thus, the Court concludes that the NLRA at least arguably applies to cannabis

businesses and that Ascend's preemption claim must be evaluated on the merits.

### b. *Garmon* Preemption Applied

Ascend argues that Measure 119 is preempted under *Garmon* because Measure 119

implicates conduct protected by both Sections 7 and 8 of the NLRA. Ascend contends that

Measure 119 disregards an employee's right to choose their own labor representation, which is

guaranteed by Section 7 of the NLRA. Moreover, Ascend argues that Measure 119 requires

employers to remain "neutral" with respect to unions communicating with their employees,

which violates the protection afforded under Section 8 of an employer's right to express "views,

argument, or opinion" on unionization. Defendants respond that Measure 119 does not implicate

the rights of either employees or employers or any other rights guaranteed under the NLRA.

Defendants further contend that Measure 119 is exempt from *Garmon* preemption because the

cannabis industry is "deeply rooted in local responsibility."

### i. Measure 119 Implicates Employer Rights Protected by the NLRA

As the party asserting preemption, Ascend bears the burden of "(1) advancing an

interpretation of the NLRA that is not plainly contrary to its language and that has not been

authoritatively rejected by the courts or the Board, and then (2) putting forward enough evidence

to enable the court to find that the NLRA arguably protects" or prohibits Ascend's conduct.

*Glacier Nw., Inc.*, 598 U.S. at 779 (cleaned up).

With respect to the first step, Ascend argues that Section 8 of the NLRA protects an

employer's free speech rights. Section 8 states that it shall not be an unfair labor practice for an

employer to express "any views, argument, or opinion," or disseminate such expression,

provided that the expression "contains no threat of reprisal or force or promise of benefit." 29

U.S.C. § 158(c). Defendants argue that Section 8 does not affirmatively provide an employer with rights, but merely provides that an employer will not be prosecuted for an unfair labor practice. This appears to be a distinction without a difference. Defendants cite no authority for their position, relying on a textual reading of Section 8. The Supreme Court, however, has held that Section 8 of the NLRA "merely implements the First Amendment" with respect to "an employer's free speech right to communicate his views to his employees." *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617 (1969). Section 8, therefore, codifies an employer's "firmly established" right to communicate views to its employees. *Id.* Accordingly, Ascend's interpretation of the NLRA as protecting an employer's free speech rights has been supported by the courts and is not plainly contrary to the text of the NLRA, and Ascend has met its burden at step one.

At step two, Ascend acknowledges that the NLRA does not protect an employer's right to expression that is threatening or coercive. Measure 119 does not distinguish between permissible employer speech and threatening or coercive speech, and Defendants do not argue that Measure 119 prohibits only threatening or coercive speech. Instead, Defendants contend that Measure 119 does not implicate employer speech because the employers must remain neutral with respect to union representatives communicating with employees but may still express their opinions about unions.

Defendants' argument is not persuasive. Defendants fail to explain how an employer can remain "neutral" while expressing opinions about why its employees should not form or join a union. Even assuming that an employer does not threaten or coerce employees and even assuming that an employer does not make any false or misleading statements of fact, if an

employer argues why an employee should not form or join a union, that is not "neutral." Further, neither Defendants nor the amicus supporting Defendants explain how that could be otherwise.

For purposes of *Garmon* preemption, Measure 119 impermissibly conditions a state license on an employer "refraining from conduct protected by federal labor law," which "chills one side of the 'robust debate which has been protected under the NLRA.'" *Brown*, 554 U.S. at 73 (first quoting *Livadas v. Bradshaw*, 512 U.S. 107, 116 (1994); and then quoting *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 275 (1974)). Ascend, therefore, has met its burden on the merits of *Garmon* preemption unless an exception applies.

### ii. The "Local Responsibility" Exception

Defendants argue that, given federal tolerance of state legalization of cannabis and Oregon's "careful regulation" of the cannabis industry, this is an area that is "deeply rooted in local responsibility" and thus Measure 119 is not preempted under *Garmon*. The local responsibility exception, however, applies only when NLRA remedies are insufficient and state actions would not interfere with the exercise of rights protected by the NLRA. *See Farmer v. United Bhd. of Carpenters, Loc. 25,* 430 U.S. 290, 299 (1977); *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 197 (1978) (holding that if "the controversy presented to the state court is identical to . . . that which could have been, but was not, presented to the" NLRB, "a state court's exercise of jurisdiction necessarily involves a risk of interference" with the jurisdiction of the NLRB and the state law is preempted). These cases have generally involved "violent tortious activity," as "[n]othing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute, and thus there is no risk that state damages actions will fetter the exercise of rights protected by the NLRA." *Farmer*, 430 U.S. at 299 (citations omitted); *see also United Constr. Workers v.*

*Laburnum Constr. Corp.*, 347 U.S. 656, 668-69 (1954) (threats of violence); *Youngdahl v. Rainfair, Inc.*, 355 U.S. 131, 139 (1957) (violence); *Int'l Union v. Russell*, 356 U.S. 634, 644-45 (1958) (violence); *Linn v. United Plant Guard Workers of Am., Loc. 114*, 383 U.S. 53, 63-64 (1966) (libel). Here, NLRA remedies are sufficient to protect labor relations, which is what Measure 119 regulates. Further, the controversy implicated by Measure 119 is identical to an issue that could be presented to the NLRB. Thus, the local responsibility exception is inapplicable.

Defendants cite *Ctrl Alt Destroy v. Elliott*, which analyzed a California law like Measure 119 and held that "*Garmon* preemption is inapplicable because the LPA Sections touch upon interests so deeply rooted in local feeling and responsibility that it cannot be inferred that Congress intended to deprive the state of the power to act." *See* 2025 WL 790963, at *7 n.8 (S.D. Cal. Mar. 12, 2025) (cleaned up). In *Ctrl Alt Destroy*, the court concluded that by enacting the Controlled Substances Act ("CSA"), which made commercial transactions involving controlled substances such as marijuana illegal at the federal level, Congress clearly expressed that it did not intend to regulate commercial transactions involving controlled substances. *Id.* But Measure 119, as well as the law at issue in *Ctrl Alt Destroy*, regulates only labor relations; although the measure applies to cannabis businesses, it does not regulate the sale or use of cannabis. Therefore, the Court does not find the reasoning in *Ctrl Alt Destroy* to be persuasive. Accordingly, Ascend has shown that the NLRA preempts Measure 119 under a theory of *Garmon* preemption.

### c. *Machinists* Preemption Applied

Measure 119 seeks to regulate—and, indeed, forbid—certain truthful, non-deceptive, non-coercive speech about unionization, which conflicts with Congress's intent to allow "uninhibited, robust, and wide-open debate in labor disputes." *See Brown*, 554 U.S. at 68

(quoting *Austin*, 418 U.S. at 272-73). More broadly, *Machinists* also prohibits state governments from "introduc[ing] some standard of properly balanced bargaining power." *Golden State*, 475 U.S. at 619 (quotation marks omitted). In *Golden State*, the Supreme Court held that a city could not condition the renewal of a company's license on reaching an agreement with a union. *Id.* at 618-19. Doing so inappropriately upset "the balance of power designed by Congress." *Id.* at 619. By conditioning license renewal on signing an LPA, Measure 119 seeks to regulate the relationship between unions and employers. This upsets the balance Congress struck in passing the NLRA. Thus, Measure 119 is preempted.

Defendants again cite *Ctrl Alt Destroy*, which concluded that *Machinists* preemption did not apply because "Congress has clarified that it does not intend to leave the cannabis industry to be controlled by the free play of economic forces. Rather, Congress enacted the CSA and declared that every commercial cannabis transaction is illegal under federal law, thereby eliminating the federal cannabis market." 2025 WL 790963, at *7 n.8 (cleaned up). But the balancing that *Machinists* seeks to protect refers only to the *labor relations* context, not to regulation of the underlying market. The "balance of power designed by Congress" in labor relations has no effect on Congress's ban on cannabis. Thus, Measure 119 regulates an area that Congress intended to leave to the free play of economic forces. Accordingly, Ascend has shown that the NLRA preempts Measure 119 under a theory of *Machinists* preemption.

### 3. Conclusion

The Court concludes that Measure 119 is preempted by the NLRA under both *Garmon* and *Machinists*.

## C.  First Amendment

Plaintiffs argue that Measure 119 is a content-based restriction on speech that is subject to strict scrutiny, and that Defendants fail to provide a compelling government interest requiring

this restriction. Defendants respond that Measure 119 is a permissible regulation of commercial speech. Plaintiffs reply that Measure 119 does not regulate commercial speech, and that even if it does, it fails the *Central Hudson*[7] test for commercial speech.

### 1. Legal Standards

The Supreme Court "has recognized that employers' attempts to persuade to action with respect to joining or not joining unions are within the First Amendment's guaranty." *Thomas v. Collins*, 323 U.S. 516, 537 (1945) (citing *NLRB v. Va. Elec. & Power Co.*, 314 U.S. 469 (1941)). "When to this persuasion other things are added which bring about coercion, or give it that character, the limit of the right has been passed. But short of that limit the employer's freedom cannot be impaired." *Id.* at 537-38 (citation omitted). Thus, it is "firmly established" that an employer has a "free speech right to communicate his views to his employees," including "any of his general views about unionism or any of his specific views about a particular union." *Gissel Packing*, 395 U.S. at 617-18. This right must, however, be balanced against "the equal rights of the employees to associate freely." *Id.* at 617. "[S]o long as the communications do not contain a 'threat of reprisal or force or promise of benefit,'" an employer may communicate his views about unions to his employees. *Id.* An employer may therefore "express opinions or predictions, reasonably based in fact, about the possible effects of unionization on its company." *Int'l Union v. NLRB*, 834 F.2d 816, 820 (9th Cir. 1987) (citing *Gissel Packing*, 395 U.S. at 618).[8]

---

[7] *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm. of N.Y.*, 447 U.S. 557 (1980).

[8] Although caselaw discussing an employer's free speech rights often references Section 8 of the NLRA, this section "merely implements the First Amendment." *Gissel Packing*, 395 U.S. at 617. As *Thomas* makes clear, the NLRA does not itself create a free speech right for employers, and therefore this test applies when evaluating restrictions on employer speech about unionization, even when the employer is not subject to the jurisdiction of the NLRA. The Court therefore applies the *Gissel Packing* test, and not strict scrutiny, as urged by Plaintiffs, or the commercial speech test, as urged by Defendants.

### 2. Analysis

Under Measure 119, Plaintiffs must "remain neutral with respect to a bona fide labor organization's representatives communicating with the employees of the applicant or the license about the rights afforded to such employees under [Oregon Revised Statutes §] 663.110." As discussed, Defendants do not explain how an employer can remain "neutral" with respect to union representatives communicating with its employees while still being free to express its opinions about unionization. Measure 119 is not limited to restricting only threatening, coercive, false, or misleading speech, but instead prohibits all speech by employers that is not "neutral" toward unionization. Therefore, Measure 119 violates Plaintiffs' First Amendment rights to free speech.

### D. Irreparable Injury and Inadequate Remedy at Law

To meet their burden, Plaintiffs must demonstrate irreparable injury in the absence of a permanent injunction and that there is no adequate remedy at law. The Ninth Circuit has held in the context of preemption that "an alleged constitutional infringement will often alone constitute irreparable harm." *United States v. Arizona*, 641 F.3d 339, 366 (9th Cir. 2011) (quotation marks omitted), *aff'd in part, rev'd in part on other grounds and remanded*, 567 U.S. 387 (2012). Moreover, a likely unconstitutional law can cause irreparable harm when it places a party in a "Hobson's choice" between (1) failing to comply with the law and losing customer goodwill and potentially the entire business, or (2) complying with a likely unconstitutional law and incurring costs. *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1057-58 (9th Cir. 2009).

In the context of the First Amendment, a party "can establish irreparable injury sufficient to merit the grant of relief by demonstrating the existence of a colorable First Amendment claim." *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (quotation marks omitted) (in the preliminary injunction context); *see also Associated Press v. Otter*, 682 F.3d 821, 826

(9th Cir. 2012) (holding that the "loss of First Amendment freedoms, even for minimal periods

of time, unquestionably constitutes irreparable injury" in the preliminary injunction context

(quotation marks omitted)).

Although Defendants argue that OLCC is not currently enforcing Measure 119, that law

includes the word "shall," indicating that OLCC does not have discretion to decide whether to

enforce its provisions. Thus, Plaintiffs reasonably fear enforcement of Measure 119 against them

and have presented evidence that by failing to comply with Measure 119, they could potentially

lose their entire businesses, and by complying with Measure 119, they would incur serious costs

in the form of unfair bargaining leverage with labor organizations. *See* ECF 27 ("Born Reply

Decl.") ¶¶ 7-8 (explaining that Ascend's service providers have informed Ascend that the

providers will drop service if Ascend's license is not active); Born Decl. ¶¶ 5-7 (stating that there

are only two labor organizations in Oregon that have authority to sign an LPA, Ascend has

attempted to negotiate with both, and both have made demands that Ascend considers to be

unreasonable). Remedies available at law would not fully compensate Plaintiffs because

Measure 119 would still be in effect and Plaintiffs would risk losing their licenses at any time.

Therefore, Plaintiffs have shown that they face irreparable harm without injunctive relief and that

any remedies available at law are inadequate.

**E.  Balance of Equities and Public Interest**

Plaintiffs also must show that the balance of equities tips in their favor, and that an

injunction is in the public interest. As noted, when a public, or governmental, entity is the party

defending against a motion for injunctive relief, these two factors merge. *See Nken*, 556 U.S.

at 435. Here, both the balance of equities and the public interest counsel support Plaintiffs.

If relief is not issued, Plaintiffs face a choice of losing their businesses or complying with

an unconstitutional law. This is irreparable harm. *See Arizona*, 641 F.3d at 366 ("[I]t is *clear that*

*it would not be equitable or in the public's interest to allow the state* . . . to violate the

requirements of federal law, especially when there are no adequate remedies available. . . . In

such circumstances, the interest of preserving the Supremacy Clause is paramount." (emphasis in

*Arizona*) (quotation marks omitted)). On the other hand, "it is clear that a state suffers irreparable

injury whenever an enactment of its people or their representatives is enjoined." *Coal. for Econ.*

*Equity v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). That harm, however, does not outweigh the

public interest in ensuring that a state does not violate the Supremacy Clause of the United States

Constitution. Thus, the Court finds that the balance of equities tips in favor of Plaintiffs.

## CONCLUSION

The Court GRANTS Plaintiffs' motion for declaratory relief, ECF 11, and will enter a

permanent injunction in favor of Plaintiffs.

**IT IS SO ORDERED**.

DATED this 20th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge